## SANDS *v.* SANDS

[No. 426, September Term, 1967.]

*Decided January 15, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*Walter B. Siwinski* and *Thomas W. Jamison, III* for appellant.

*H. Spencer Everett, Jr.,* with whom was *Jesse Slingluff* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Appellant (Sands) seeks the reversal of the judgment of appellee, his divorced wife, against him for $3,249.29. He claims the trial judge, Raine, J., has misinterpreted their separation agreement. The facts are not in dispute.

The marriage, made in 1942, fell apart in 1952. Two childred (boys) were born, one in 1946, the other in 1948. On 15 November 1955 Sands and appellee entered into an agreement reciting the existence of "great and irreconcilable differences" and an intention to provide for the "support and maintenance" of appellee and the two boys. Each of the parties was represented in the negotiations by alert, able and experienced members of the bar. The agreement itself is long, comprehensive and carefully drawn. In addition to the matters ordinarily found in such documents there are elaborate provisions for such things as the payment of mortgage installments, taxes, ground rent and fire insurance, life insurance and medical insurance premiums. Virtually nothing was overlooked. The provisions Sands claims were misconstrued by Judge Raine are as follows:

> "3. (a) Beginning with November 14, 1955, Husband will pay to Wife the sum of Three Hundred and Seventy-five Dollars ($375.00) per month, of which said sum One Hundred Ninety-one Dollars and Sixty-six Cents ($191.66) per month shall be for the support and maintenance of Wife, and One Hundred Eighty-three Dollars and Thirty-four Cents ($183.34) per month shall be for the support and maintenance of the minor children of the parties. The first such payments shall be made on November 14, 1955, and ensuing payments shall be made regularly on the 14th day of each month.
>
> "(b) It is understood and agreed that the provisions herein made for support and maintenance of Wife and

the minor children of the parties *shall be net to Wife,* and that *any income taxes due thereon shall be paid by Husband.* Wife agrees that, so long as the parties shall remain under the law of the State of Maryland as husband and wife, she will, upon the request of Husband, and without any cost or expense to her, make, execute and join with Husband in the execution of such joint individual income tax returns as shall be required to satisfy the Internal Revenue Statutes of the United States of America and the regulations promulgated thereunder, as well as any similar statutes made and passed, or regulations adopted by the State of Maryland, to the end and intent that Husband may lawfully be responsible for only minimum taxes." (Emphasis added.)

Not long after the execution of the contract the parties were divorced a vinculo. Sands thereafter did all that was required of him by the agreement except pay the "income taxes due" on the payments made to appellee for her support and maintenance, but we note that appellee made no demand upon him in this regard until 1965.

Appellee failed to file an income tax return (either State or Federal) for any of the years 1956 through 1964. In 1965, following an audit of William H. Sands, Inc. (Sands' alter ego from which he derived, in 1955, an income of $35,529), the Internal Revenue Service required her to pay taxes in the amount of $2,840.53 plus interest in the sum of $760.61. The table set forth below will show the derivation of those two figures:

| | Maintenance and Support Payments to Appellee | Appellee's Other Income | Tax Paid by Appellee | Interest Paid by Appellee | Md. Tax Paid by Appellee |
|---|---|---|---|---|---|
| 1956 | 2,299.92 | 38.90 | 299.44 | 153.06 | 27.00 |
| 1957 | 2,299.92 | 38.90 | 299.44 | 134.75 | 27.00 |
| 1958 | 2,299.92 | 48.05 | 299.08 | 116.99 | 40.75 |
| 1959 | 2,299.92 | 59.50 | 302.62 | 100.21 | 41.05 |
| 1960 | 2,299.92 | 195.91 | 320.16 | 86.44 | 44.74 |
| 1961 | 2,299.92 | 240.08 | 327.40 | 68.75 | 45.93 |
| 1962 | 2,299.92 | 605.80 | 380.77 | 57.11 | 58.92 |
| 1963 | 2,299.92 | 792.80 | 405.29 | 36.47 | 67.71 |
| 1964 | 2,299.92 | 795.73 | 206.33 | 6.83 | 55.66 |
| | | | 2840.53 | 760.61 | 408.76 |

Appellee forthwith demanded reimbursement from Sands and upon his refusal to pay she filed suit, on 23 November 1965, in the Circuit Court for Baltimore County, alleging the 1955 agreement and Sands' failure "to comply with the terms" thereof. After many months of pleading and discovery appellee's motion for summary judgment came on for a hearing on 31 March 1967. At the conclusion of the hearing, at which no evidence was offered, Judge Raine announced his intention to grant summary judgment on the issue of liability only. Maryland Rule 610 d 1. He said:

> "A summary judgment will be granted declaring that Douglas H. Sands has no responsibility for the payment of any interest or penalties that have been assessed by any government, state or federal, it being the Court's opinion that it was the responsibility of the wife to file tax returns and if she had filed them promptly and paid the taxes there would have been no interest charges and I think, unfortunately, that she must bear that burden, so, the amount due to the wife will be calculated without inclusion of any interest charges by the taxing authorities.
>
> "The agreement will be construed literally, and the husband agreed to pay the taxes due on the support payments so that she would get the net sum. There is no way to take the 2900, or $2000 out of her total tax picture, so that he is going to have to pay the taxes on the rate assessed by the Federal government even though the tax burden will be greater than he had anticipated because of the change in her financial position, * * *. You know where you stand. At least now I think you can straighten it out, can't you?
>
> "(Mr. Everett) I think so.
>
> "(The Court) Whether I'm right or wrong, whether you agree with me or not, you at least know where you stand?
>
> "(Mr. Harrison) [at that time counsel for Sands] Yes, sir."

In September 1967 appellee filed a "Motion for Final Judg-

ment" in the amount of $4,381.48 "pursuant to the guidelines laid down" by Judge Raine on 31 March 1967. Sands, in his answer to the motion, objected to appellee's computation because, he said, it included and took into consideration "income of * * * [appellee] other than the support and maintenance payments with the result that the tax allocable to * * * [him] is at a higher rate than * * * [it] would be if the computation of [the] tax were made only upon the support and maintenance payments without regard to * * * [appellee's] other income." He admitted liability for taxes computed without regard to appellee's other income, conceding that amount to be $2,566.00.

The final hearing before Judge Raine took place on 27 December 1967. Referring to his earlier ruling, he said:

> "Now, at that time I ruled that the agreement was clear and that the husband's liability would have to be predicated on the following 'formula,' to wit, the wife would have to determine what her income taxes would be without including in her gross income the amounts received from the husband and that there would then have to be made a computation of the amount of tax that would be due by the wife on the income that she received, plus the amount of money contributed under the agreement by the husband and that the difference in the amount of tax liability would be the amount that the husband would be required to pay in order to conform to the terms of the agreement as it was written and as the Court construed it. * * *."

Two days later he ordered the entry of a judgment in favor of appellee "in the amount of $3,249.29, being the amount found to be due * * * as of November 23, 1965," the date her suit was filed. It will be noted that the amount of the judgment is the sum of the federal taxes ($2,840.53) for the years 1956 through 1964 and the Maryland taxes ($408.76) for the same period. Although Sands, in his brief, claimed the inclusion of the Maryland tax was improper, at argument this point was abandoned. Since appellee did not file a cross appeal and seeks only the affirmance of the judgment below we shall assume, without deciding, that she has abandoned her claim for interest

($760.61) and any claim she might have to recover additional amounts from Sands arising out of the fact that the payment of the judgment ($3,249.29) may constitute additional taxable income to her.

The only question unresolved, therefore, is whether Judge Raine is in error in his construction of paragraph 3 (b) of the separation agreement. We have discovered none. We see no ambiguity in the language used nor do we see in the record any circumstance sufficiently conspicuous or significant to make us suspect that the parties, advised by such competent counsel, intended any other or different construction. Had that been the case one would have expected the agreement specifically to so provide. Indeed, the question is dealt with in some of the text books and in some of the form books language will be found which is appropriate in just such situations.[1]

Sands insists that the words "any income taxes due thereon," literally construed, mean that the income taxes due on the support payments to appellee must "be calculated at a rate applicable to such payments only, and without the inclusion of any other income." If that is what was meant then that is what could have been said. Sands contracted to pay "any income tax due" on the payments made to *appellee,* not to some imaginary person with nothing and with no expectation of ever having anything. He is bound to have known that she had some income (she did) and that it might increase (it did). Indeed, had she gotten a job her income might have increased by as much as $3,000 to $5,000 per annum. The support payments descend upon her as she is, whether jobless, penniless, comfortable or rich and if they are to be "net" to her, then the amount of "any income taxes due thereon" must be computed in the light of her other income. We have excluded from our consideration, of course, what the text writers call the "troublesome question of pyramided taxes," sometimes described as "a tax on a tax on a tax," since, as we have said, appellee seeks only the affirmance of the judgment of the trial court.

---

1. A. Lindey, *Separation Agreements and Ante-Nuptial Contracts Ann.* § 19, Form 19.03 (1967); H. Myerberg, *Practical Aspects of Divorce* 67 (1st ed. 1951); 4 Rabkin and Johnson, *Current Legal Forms with Tax Analysis,* Form 10.53.

A circumstance which should not be overlooked and which, to be sure, does not attenuate Judge Raine's construction of the agreement arises out of the impact of the federal income tax laws upon both Sands and the appellee. If Sands' income, which was over $35,000 in 1955, has not diminished, and we shall assume that it has not, then by deducting from his gross income the annual payment ($2,299.92) to the appellee, he reduces his own tax bill by about $1,400. Obviously the increase in appellee's tax bill brought about by the receipt of the $2,299.92 will continue to be less than $1,400 unless and until such time as her taxable income equals that of Sands, a possible but unlikely eventuality.

The general rule governing the construction of written contracts was stated in *Slice v. Carozza Properties, Inc.*, 215 Md. 357, 368, 137 A. 2d 687 (1958), where Chief Judge Brune, for the Court, said:

> "* * * we may note first that the theory of 'objective law' of contracts has been almost universally adopted by this time. The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake. *Ray v. Eurice,* 201 Md. 115, 93 A. 2d 272. '* * * where there has been an integration of an agreement, those who executed it will not be allowed to place their own interpretation on what it means or was intended to mean. The test in such case is objective and not subjective. * * * *Williston* * * * Sec. 94, page 294, says: "It follows that the test of a true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." ' *Ray v. Eurice, supra,* p. 127."

*See also Keyworth v. Industrial Sales Co.,* 241 Md. 453, 456, 217 A. 2d 253 (1966).

The only decision which seems to be at all apposite to the case at bar is *Metcalf v. Metcalf,* 274 App. Div. 744, 87 N.Y.S. 2d 122 (1949). Both parties rely upon it to some extent. There the agreement, made in 1934, required the husband to pay the wife $15,000 per annum and establish a $100,000 trust fund to secure the payment thereof. It also provided that the wife had to pay all income taxes on the income from the trust. The husband was required to reimburse her "to the extent to which her income tax had been increased as the result of the addition of the income from the trust fund to the income she would otherwise report." The wife sought reimbursement for the taxes occasioned by the $15,000 payment whereas the income from the trust was only about $3,000. The court said :

> "The trust indenture defines 'taxes' as used therein to mean 'all taxes paid by Mabel V. Metcalf [plaintiff] over and above such taxes as she would otherwise pay for the addition to her personal income of the income *from this trust.'* (Emphasis added.) Both the settlement agreement and the trust indenture refer to taxes four times and in each instance the reference is expressly limited to taxes on the income from the trust fund. Thus the agreement itself clearly provides that the husband is to be liable for income taxes only on the income from the trust and not on the total annual sum of $15,000 which he was obligated to pay under the agreement and has paid plaintiff annually since 1934.
>
> "When that agreement is read in the light of the law in effect at the time the agreement was executed, in 1934, it is clear that the agreement as written did not bind the husband to pay the wife's income tax on anything more than the income from the trust. At that time alimony was not taxable to the wife and was not deductible in the husband's tax return. But there was a question whether income from an alimony trust was taxable to husband or wife and that question was not resolved until 1935 when the Supreme Court ruled' that such income was taxable to the husband. Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59; 80 L. Ed. 3,.

101 A.L.R. 391. The fact that in 1942 and 1943 the federal and state governments drastically revised their taxing statutes so as to shift the burden of taxes upon alimony payments from payor to recipient, cannot change the plain meaning of the contract as written. We think the agreement as executed is clear and unambiguous and its terms expressly contradict plaintiff's pleaded construction." *Id.* at 126.

It is apparent that *Metcalf,* while interesting, is not especially helpful here.

Sands contends the summary judgment should not have been granted because, while there is no dispute as to any material facts, the facts are susceptible of more than one inference. We are not persuaded that this is so. Judge Raine found the agreement to be susceptible of only one inference, *i.e.,* that its meaning was plain and unambiguous. We see no reason for disturbing his conclusion.

*Judgment affirmed.*
*Costs to be paid by appellant.*