## CASSIDAY *v.* CASSIDAY

[No. 89, September Term, 1969.]

*Decided December 5, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY, and SMITH, JJ.

*Johnson Bowie* and *Randolph N. Blair* for appellant.

*Lloyd J. Hammond,* with whom were *Douglas G. Bot-*

*tom* and *James Temple Smith, Jr.*, on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

Two questions are presented to us in this appeal. These are whether or not the Circuit Court for Baltimore County (Haile, J.) erred in its determinations (1) that John F. Cassiday, the deceased divorced former husband of the appellee, Margaret T. Cassiday, the named insured in two life insurance policies issued by the Horace Mann Life Insurance Company (the Company) upon the life of Mr. Cassiday, had made no parol assignment or gift of the two policies to the appellant Edytha F. Cassiday, wife of the insured, and (2) that Margaret, the appellee former wife, had not relinquished her rights in the two policies by a separation agreement between Margaret and the deceased insured.

The basic facts are not in dispute. The insured, employed by the Baltimore County Board of Education as a principal of a senior high school, married the appellee Margaret on November 1, 1947. During their married life and prior to their divorce on December 6, 1966, the insured obtained the two group policies, Nos. 140 and 140A for a total amount of life insurance of $26,000. The certificates for these policies were issued to the insured on April 1, 1966, and Margaret was the named beneficiary in each policy. The policies reserved the right of the insured to change the beneficiary named in the policies unless there had been an irrevocable designation of beneficiary. Margaret had not been named as an *irrevocable* beneficiary. Also during the time Margaret and the insured were married, the insured had obtained life insurance policies from the New York Life Insurance Company, John Hancock Mutual Life Insurance Company, and the N. E. A. Insurance Trust.

Margaret and the insured executed a separation agreement on August 23, 1966, in which in paragraph 4, it was provided:

"The wife hereby covenants and agrees that all the personal property now in the possession of the husband shall be his sole and separate property."

Margaret and the insured were divorced a vinculo matrimonii by the Circuit Court for Baltimore County on December 6, 1966. The insured married the appellant Edytha on April 11, 1967.

The secretary for the insured at the senior high school testified that her stenographic notes indicated that the insured between March 21, 1967, and April 24, 1967, had written appropriate letters to the three other insurers already mentioned changing the named beneficiaries from Margaret to Edytha, but that no such letter had been written by her in regard to the two group policies in question.

The Company, faced with the conflicting claims of Edytha and Margaret to the proceeds under the two policies in question, filed a bill of interpleader in the Circuit Court for Baltimore County and deposited the net proceeds of the policies in that Court. The lower court designated Margaret as plaintiff in interpleader and Edytha as defendant in interpleader.

Margaret testified at the hearing in the interpleader case that she at one time had possession of the two certificates for Nos. 140 and 140A but that her son-in-law had given them to the insured. She did not know when this occurred.

Edytha testified that shortly after she and the insured were married, the insured brought the two certificates and other important papers home from school in a folder which he put "in the dresser drawer" over which both had "control." He stated to Edytha that "in the folder were his insurance policies, the beneficiaries were changed and it would be put in his dresser drawer or a dresser drawer, the dresser we shared together and he also said he didn't want that woman to have any more of his money." By "that woman," he meant "his former

wife." There was no further conversation about the policies. The insured died on November 23, 1967. Edytha did not see the two certificates in question until after her husband's death. They were still in the folder in the dresser drawer with the other papers.

On cross-examination, Edytha testified that she had collected on all of the policies except the two policies in question. She stated that prior to bringing the Horace Mann certificates and the other policies home, he kept them at school. He placed the folder in "his dresser drawer" in the one dresser in their bedroom containing six drawers and that "he kept his personal effects" in that drawer. She said her husband did not "go over the policies" at the time the folder was placed in the dresser drawer. "He just told me they were there." She examined the policies approximately 10 days after her husband's death and at that time discovered that she was not the named beneficiary in the Horace Mann policies.

### (1)

On the issue of whether or not the evidence established a parol assignment or gift of the two policies in question, the lower court in its opinion stated:

> "After careful consideration of the respective contentions of the parties, and of the authorities cited, and after weighing the testimony in the case, I have concluded that the life insurance policies were neither given nor assigned by Mr. Cassiday to Edytha Cassiday on the day Mr. Cassiday brought them home in a folder and placed them in the dresser drawer.
>
> "A gift, or an assignment, of a chose in action, must be proved by credible evidence. An intention to part with the chose in action must be shown.
>
> "What did he say? He said: 'The beneficiaries were changed.' He said he didn't want his former wife 'to have any more of his money.' He

did not say: 'Edytha, I give you these policies.' He did not say: 'Edytha, these policies are yours.'

"Nor did he say that the beneficiaries were changed on all of the policies. He could not have said so, because as a matter of fact he had not changed the beneficiary on *all* of the policies.

"There is no evidence he was lacking mental capacity to understand what he was doing. He was an educated man, the principal of a school. He had previously written letters to change the beneficiary named in most of his policies, but not in the Horace Mann certificates. This court concludes that he exhibited no intention either to give or assign the policies to Edytha Cassiday.

"The court considers Mr. Cassiday's comment to the effect that he did not want his former wife to have any more of his money as a non-sequitur.

"A gift of life insurance policies cannot be evidenced by a negative declaration by the owner of them that he does not want his former wife to have any more of his money. Life insurance policies are not money, they are choses in action.

"Again, it is what he did *not* say, that is significant. He didn't say his former wife *was not to share in his insurance*. On the contrary, his decision to allow his former wife to remain as the designated beneficiary of the Horace Mann group insurance, indicates he had made up his mind and had determined to have her share in his insurance, even before he had brought the policies home from his office. It is inconceivable that he would include his former wife in his insurance program at his office, and change his mind on the way home. Had he changed his mind, he doubtless would have dictated two

more letters to his secretary the next day, to effect the change, or to attempt to do so. Failing that, he would certainly have been more specific in explaining to his wife Edytha that the group insurance policies were hers, notwithstanding the fact that his former wife was still the beneficiary of record. He did neither.

"In short, he did not intend to give any of the policies to her. He merely brought them home, so that they would be found in case of his death."

(Emphasis in the lower court's opinion)

We cannot say that the lower court was clearly erroneous in its findings of fact or was in error in concluding that no parol assignment or gift of the two policies in question had been established by Edytha.

In *Schilling v. Waller,* 243 Md. 271, 220 A. 2d 580 (1966), a husband, ill in a hospital, gave his wife his key to a safe deposit box to which the husband had joint access and each had a key, with the statement, "I want you to take care of the purse strings and I want you to have everything that's in the box. * * * you will have to take care of the purse strings for awhile." We held, reversing the trial court, that this evidence was not sufficient to establish a parol gift of the stocks, savings pass book and note in the safe deposit box. Judge Marbury, for the Court, stated:

"In the case of *Whalen v. Milholland,* 89 Md. 199, 211, 43 Atl. 45, 50, our predecessors used the following language, which is also apposite here:

'Mindful of the facility with which, after the alleged donor is dead, fraudulent claims of ownership may be founded on pretended gifts of his property asserted to have been made whilst he was living, it is but a salutary precaution which demands *explicit* and *convincing* evidence of *every element* needed to con-

stitute a valid donation whether it be a donation *inter vivos* or *mortis causa*. Even then, fraudulent claims may prevail, but the *rigid requirement* of the *clearest proof* will at least diminish the number.' (Emphasis added.)

"See also *Schenker v. Moodhe*, 175 Md. 193, 197, 200 Atl. 727, and *Garner v. Garner*, 171 Md. 603, 612, 190 Atl. 243, where the above language was quoted with approval. One of the elements of a valid gift *inter vivos* is, of course, that the donor intended to make a gift. In this State it is well settled that in order for such an intent to be proven, it must be shown from the evidence that the donor *clearly* and *unmistakably* intended to *permanently* relinquish all interest in, and all control over the *res* which is the subject of the gift." (Citing a number of prior Maryland cases and other authorities) (243 Md. at 276-77, 220 A. 2d at 583, emphasis in the original opinion)

The lower court, after a careful analysis of the evidence, concluded that the deceased insured did not *intend* to give the two policies in question to Edytha and we cannot conclude that he was clearly erroneous on his factual findings—See Maryland Rule 886 a—or that his conclusion was in error.[1] Inasmuch as the first necessary element of an effective parol gift or assignment of the two policies in question, *i.e.*, the intent to make the gift or assignment, is not present, the gift or assignment fails and we need not consider the second required element, namely, a complete and absolute surrender of all power and dominion over the certificates. See *First National*

---

1. The lower court erroneously stated that Margaret had been designated beneficiary by the insured without reserving the right to revoke the designation. As we have indicated, Margaret was never designated as an *irrevocable* beneficiary and the policies give the insured the right to change a beneficiary not so designated. This error, however, is immaterial to the ultimate decision in the case.

*Bank v. Thomas,* 151 Md. 241, 248, 134 A. 210, 213 (1926).

### (2)

We also agree with the trial court that Margaret did not lose her rights as the named beneficiary in the two policies in question as a result of any provision of the separation agreement between the insured and Margaret. The two policies as choses in action were delivered to the insured and unquestionably he *could* have changed the beneficiary from Margaret to Edytha if he had so desired and as he did in the other three life insurance policies. There is nothing in the separation agreement which precluded Margaret from receiving money from the insured as a beneficiary, designated by the husband, in his insurance policies. Any rights she may have as a beneficiary named by the insured, were in no way affected by the delivery of the policies by her son-in-law to her husband. He had the undoubted right to change the beneficiary in his policies; he did not see fit to do this and her rights as beneficiary were established at the time of his death. See *Bullen v. Safe Deposit & Trust Co.,* 177 Md. 271, 277, 9 A. 2d 581, 583 (1939).

> *Order of February 10, 1969, directing the clerk of the Circuit Court for Baltimore County to pay $26,000 deposited in that court less the costs of the interpleader proceeding, affirmed; the costs of this appeal to be paid by the appellant.*