748 A.2d 1082

Carol S. EAST

v.

PAINEWEBBER, INC., et al.

No. 506, Sept. Term, 1999.

Court of Special Appeals of Maryland.

March 31, 2000.

Benjamin Rosenberg (Shawn J. Sefret and Rosenberg, Prout, Funk & Greenberg, LLP, on the brief), Baltimore, for appellant.

Barbara J. Gorinson, Greenbelt, for appellees.

Argued before WENNER, BYRNES and ADKINS, JJ.

WENNER Judge.

Appellant, Carol East (Carol), appeals from a judgment of the Circuit Court for Prince George's County. Appellees are PaineWebber, Inc. (PaineWebber), Deborah East (Deborah), and the Estate of Dewey Frank East, Jr. (the Estate).

On appeal, Carol presents us with the following question:

Did the trial court err when it ruled as a matter of law that Appellant, the named beneficiary of the East IRA Account, had waived her right to the proceeds of the East IRA Account by virtue of her execution of the Separation Agreement?

We shall answer in the affirmative and reverse the judgment of the circuit court.

### Facts

The parties do not dispute the following facts. Dewey Frank East, Jr. (Dewey) and Carol were married on 27 July

1985. Sometime during their marriage, Dewey decided to open an individual retirement account (IRA). He eventually opened an IRA with PaineWebber on 16 April 1986 (the East IRA) by completing an "Adoption Agreement and New Account Form for PaineWebber IRA's" that named Carol as beneficiary. The parties eventually separated and entered into a separation agreement (the Agreement), which was incorporated, but not merged, into a judgment of absolute divorce granted Dewey by the Circuit Court for Prince George's County.

In the Agreement, Carol and Dewey waived a number of their respective rights, but the provisions of the Agreement pertinent to our discussion of the issue presented are as follows:

**Pension Waiver**

Each of the parties hereby expressly waives any legal right either may have under any Federal or State law as a spouse to participate as a payee or beneficiary regarding any interests the other may have in any pension plan, profit-sharing plan, or any other form of retirement or deferred income plan including, but not limited to, the right either spouse may have to receive any benefit, in the form of a lump-sum death benefit, joint or survivor annuity, or pre-retirement survivor annuity pursuant to any State or Federal law, and each of the parties hereby expressly consents to any election made by the other, now or at any time hereafter, with respect to the recipient and the form of payment of any benefit upon retirement or death under any such pension plan, profit-sharing plan, or other form of retirement or deferred income plan.

\* \* \*

**Waiver of Estate Claim**

Each party releases and relinquishes to the other party and to his or her heirs, executors, administrators, or assigns, any and all claims or rights which may now exist or may hereafter arise by reason of the marriage between the

parties with respect to any property, whether real, personal, or mixed, belonging to such other party specifically including but not limited to any right arising under the Maryland Marital Property Act. Without limiting the foregoing, each party waives and releases to the other party and to his or her heirs, executors, administrators, and assigns, all rights to share in any of the property or estate of the other party which has arisen or may hereafter arise, by operation of law or otherwise and specifically including any right, title or interest wife may have in Dewey East Excavating Co., Inc. Specifically, each party waives and releases all right of dower or courtesy [sic], all right to share in the estate of the party under the intestacy laws of any jurisdiction, all right of election to take against any last will and testament of the other party whether executed before or after the execution of this Agreement, and all right to secure administration or to act as executor or administrator of the estate of the other party.

\* \* \*

**Property Division**

As of the date of this Agreement, Wife acknowledges that all personal property now in husband's [sic] possession belongs to the Husband. To the extent that Wife may have any interest in such property, the Wife for herself, her heirs, representatives and assigns quit claims any and all interest that the Wife may have in such property.

It is undisputed that on 9 July 1993, Dewey remarried. What is disputed is whether Dewey also changed the East IRA's beneficiary. It appears that after Dewey completed and returned the necessary paperwork, PaineWebber lost it. Consequently, PaineWebber faxed Dewey another "Adoption Agreement and New Account Form for PaineWebber IRA's," one of several forms used by PaineWebber for changing a beneficiary. On the very next day, Dewey signed the form and faxed it to PaineWebber. Dewey did not designate a new beneficiary, leaving that part of the form blank. Paine-

Webber's District Administrator Manager approved Dewey's choice not to designate a beneficiary. Under its terms, if a beneficiary had not been designated at the time of Dewey's death, the IRA's proceeds would be paid to Dewey's estate.

Dewey died on 10 December 1996. On 28 October 1997, Carol filed an action seeking to recover the proceeds of the East IRA. PaineWebber answered, and filed a counterclaim and a cross-claim for interpleader against the Estate. In turn, the Estate filed a motion for summary judgment. Carol responded with a motion for partial summary judgment, asserting that by executing the Agreement she had not waived her rights as beneficiary of the East IRA.

Following a hearing on the pending motions, the trial court ruled from the bench that, by executing the Agreement, Carol had waived her rights as beneficiary of the East IRA, and granted appellee's motion for summary judgment. The trial court eventually filed two orders. One awarded the proceeds of the East IRA to the Estate. The other granted Paine-Webber's motion for interpleader. In this appeal, Carol does not dispute the interpleader order.

Naturally unhappy with the decision, Carol noted this appeal.

## Standard of Review

■ "The standard of appellate review of a trial court's grant of a motion for summary judgment is whether the trial court was 'legally correct.' " *Pittman v. Atlantic Realty Co.,* 127 Md.App. 255, 269, 732 A.2d 912, *cert. granted,* 356 Md. 495, 740 A.2d 613 (1999); *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990). "In making our analysis, we do not accord deference to the trial court's legal conclusions." *Lopata v. Miller,* 122 Md.App. 76, 83, 712 A.2d 24, *cert. denied,* 351 Md. 286, 718 A.2d 234 (1998). "[A] grant of summary judgment is appropriate only when the movant for summary judgment clearly demonstrates the absence of any genuine issue of material fact, and demonstrates that it is entitled to judgment as a matter of law." *Pittman* at

269, 732 A.2d 912. "In ruling on a motion for summary judgment, the court must consider the motion and response submitted by the parties in a light most favorable to the non-moving party." *Id.* at 270, 732 A.2d 912.

■ "It is ... clear that under Maryland's summary judgment rule a trial court determines issues of law; it makes rulings as a matter of law, resolving no disputed issues of fact." *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993). Trial courts must be mindful that, "[e]ven where the underlying facts are undisputed, if the undisputed facts are susceptible of more than one permissible factual inference, the choice between those inferences should not be made as a matter of law, and summary judgment should not be granted." *Heat & Power Corp.* at 591, 578 A.2d 1202. "[W]hen the moving party has set forth sufficient grounds for summary judgment, the opposing party must show with some precision that there is a genuine dispute as to a material fact." *King v. Bankerd,* 303 Md. 98, 112, 492 A.2d 608 (1985). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *Id.* at 111, 492 A.2d 608. The party opposing the motion bears the burden of showing that material facts are in dispute. "[T]he mere existence of a scintilla of evidence in support of the [opposing party's] claim is insufficient to preclude the grant of summary judgment; there must be evidence upon which the jury could reasonably find for the [opposing party]." *Beatty* at 738–39, 625 A.2d 1005.

As the facts before us involving the Agreement are undisputed, summary judgment is appropriate. Hence, our task is to determine whether the trial court was legally correct in granting appellee's motion for summary judgment.

## Discussion

On appeal, the parties are seeking an answer to an age old question—who gets the money? Carol believes the money is hers because she is the named beneficiary. The Estate believes the money is the Estate's for two reasons. First, the

Estate believes that by executing the Agreement, Carol waived her rights to the proceeds of the East IRA. Second, the Estate believes Dewey had removed Carol as the named beneficiary.

The trial court agreed with the Estate's first contention and granted its motion for summary judgment. As the trial court put it, "I don't think there's any dispute of facts past the separation agreement that we need to address. I think the clear intent of the parties, if you read the agreement as a whole, I'm convinced that the money should be paid over to the estate and the motion for summary judgment should be granted." Thus, it is clear that the trial court did not address the Estate's second contention that Dewey had removed Carol as the named beneficiary of the East IRA. "An appellate court ordinarily should review a grant of summary judgment only on the grounds relied upon by the trial court." *Suburban Hosp., Inc. v. Maryland Health Resources Planning Comm'n,* 125 Md.App. 579, 587, 726 A.2d 807, *cert. granted,* 354 Md. 570, 731 A.2d 969 (1999)(footnote omitted). Hence, we may review only whether Carol, by executing the Agreement, waived her rights to the proceeds of the East IRA. Since the trial court did not address whether Dewey had removed Carol as named beneficiary, we will not address it.

Neither the parties' briefs, nor our independent research, have revealed a Maryland case that has squarely addressed the issue now before us. The closest is *Cassiday v. Cassiday,* 256 Md. 5, 259 A.2d 299 (1969), where the husband owned several insurance policies that named his wife as beneficiary. The parties eventually separated and entered into a separation agreement. In the separation agreement, the wife "covenant[ed] and agree[d] that all the personal property now in the possession of the husband shall be his sole and separate property." After the parties had been divorced, the husband remarried and changed the beneficiary on three of his policies to his current wife, but did not remove his former wife as beneficiary of the remaining policies. When the husband died, the insurance company was uncertain whether to pay the

benefits to decedent's present or former wife, and filed a bill for interpleader. The Court of Appeals determined that the proceeds belonged to the former spouse, because "[t]here is nothing in the separation agreement which precluded [the former wife] from receiving money from the insured as a beneficiary, designated by the husband, in his insurance policies." *Id.* at 12, 259 A.2d 299.

■ *Cassiday* places Maryland in the majority of jurisdictions that hold that, because of divorce, the former wife does not waive automatically her right to claim insurance benefits as survivor beneficiary. *See Walden v. Walden,* 686 So.2d 345, 346 (Ala.Civ.App.1996)("[T]he right of the beneficiary to receive proceeds pursuant to the [insurance] policy is not affected by divorce."); *Schultz v. Schultz,* 591 N.W.2d 212, 213 (Iowa 1999)("Iowa follows the majority rule that 'divorce or dissolution per se does not void the designation of a named spouse on a life insurance policy.'"); *Estate of Anello v. McQueen,* 953 P.2d 1143, 1145 (Utah 1998)("[D]ivorce alone does not terminate a former spouse's rights as a survivor beneficiary of an insurance policy, IRA, or retirement benefits . . . ."). *See also* Debra E. Wax, Annotation, *Property Settlement Agreement as Affecting Divorced Spouse's Right to Recover as Named Beneficiary Under Former Spouse's Life Insurance Policy,* 31 A.L.R.4th 59 (1984). We believe this reasoning also applies equally to a former spouse named beneficiary of an IRA. That is, according to *Cassiday,* more than a divorce is required to terminate the claim of a former spouse who is named beneficiary under an IRA.

■ Consequently, we must determine whether, by executing the Agreement, Carol waived her claim as named beneficiary of the proceeds of East IRA account. Thus, we now turn our attention to the Agreement. In doing so, we first note that "[p]roperty settlement agreements, as all other contracts . . . are subject to interpretation in light of the settled and oft-repeated principles of objective construction." *Goldberg v. Goldberg,* 290 Md. 204, 212, 428 A.2d 469 (1981). "[W]here a contract is plain and unambiguous, there is no

room for construction, and it must be presumed that the parties meant what they expressed. Thus, when interpreting a separation agreement, [an appellate court] is bound to give effect to the plain meaning of the language used." *Id.* (internal quotations and citations omitted). With these principles firmly in mind, we will now examine *seriatim* the applicable waiver provisions contained in the Agreement.

■ We first examine the "Pension Waiver" provision of the Agreement. In its brief, the Estate concedes that the first portion of this provision "is simply inapplicable and irrelevant." We agree. In this provision, Carol waived her rights "as a spouse to participate as a payee or beneficiary regarding any interests the other may have in ... any other form of retirement or deferred income plan." (Emphasis added.) Carol's right as named beneficiary to the proceeds of the East IRA do not arise from her rights as a spouse, but from Dewey's contract with PaineWebber for the IRA which named Carol as the designated beneficiary. Accordingly, the first portion of this provision is inapplicable, as is the next portion; because we are not here dealing with Carol's consent to the change of beneficiary, that fact is simply irrelevant. During their marriage, as well as after their divorce, Dewey was free at anytime to remove Carol as the named beneficiary of the East IRA. Carol's permission to do so was not required. The issue is whether Carol waived her right, not whether she consented to being removed as a beneficiary. Thus, the "Pension Waiver" provision of the Agreement does not support a finding that Carol waived her rights as beneficiary to the East IRA.

■ We next turn to the provision of the Agreement labeled "Waiver of Estate Claim". In its brief, the Estate quotes the following language from this provision:

> [E]ach party waives and releases to the other party ... all rights to share in any of the property ... of the other party which has arisen or may hereafter arise by operation of law or otherwise.

The Estate posits that, by this language, Carol waived her rights as beneficiary to the East IRA. The Estate is simply wrong. We remind the Estate that "[i]t is a recognized rule of construction that a contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause or phrase so that a court does not cast out or disregard a meaningful part of the writing." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 782, 625 A.2d 1021 (1993). The language in the provision immediately following the language cited to us by the Estate is illuminating. It reads:

> Specifically, each party waives and releases all right of dower or courtesy [sic], all right to share in the estate of the party under the intestacy laws of any jurisdiction, all right of election to take against any last will and testament of the other party whether executed before or after the execution of this Agreement, and all right to secure administration or to act as executor or administrator of the estate of the other party.

As we must read a contract in its entirety, we must not disregard any portion of the provision. Thus, in reading this provision of the Agreement in its entirety, we conclude that Carol waived only her rights to or any claims against the Estate that she may have had prior to the Agreement. The Estate, on the other hand, would have us read this provision as a broad waiver of all of Carol's rights, including her right as named beneficiary of the East IRA. We do not read it quite so broadly. We point out to the Estate, that, at Dewey's death, if Carol remained as named beneficiary of the East IRA, its proceeds would be paid directly to her and would not pass through the probate process. Thus, the proceeds of the East IRA would not be a part of Dewey's estate. Consequently, a waiver of rights against an estate is simply inapplicable to a waiver of the right to claim as a named beneficiary of an IRA because, if there is a named beneficiary, the IRA does not become a part of the estate. We thus conclude that this waiver also does not support a finding that Carol had waived her rights as beneficiary of the East IRA.

■ Finally, the Estate contends that the Property Waiver provision operates as a general waiver of Carol's rights as a beneficiary. Under this provision, Carol waived her right to all personal property then in Dewey's possession, and agreed that "to the extent that [she] may have any interest in such property, [she] quit claims any and all interest ... in such property." The Estate believes that, by this broad waiver, Carol waived her right as a beneficiary under the East IRA. We again see it differently.

As Carol correctly points out, she had no property interest in the East IRA until Dewey's death. In *Bullen v. Safe Deposit & Trust Co. of Baltimore,* 177 Md. 271, 277, 9 A.2d 581 (1939), the Court observed that

> [t]here can be no doubt that a beneficiary in a life insurance policy has no such interest in it, or control over it, as entitles [the beneficiary] to say what shall be done with it, or control the change . in beneficiaries, or other dealings during the lifetime of the holder of the policy. It is only after the death of the holder that such interests or rights attach to the proceeds.

*Accord Durst v. Durst,* 232 Md. 311, 315, 193 A.2d 26 (1963); *See also Chapman v. Prudential Ins. Co. of America,* 215 Md. 87, 90, 136 A.2d 752 (1957)("Where the right ... to change the beneficiary ... is reserved, the beneficiary has no vested or indefeasible interest ... only a revocable expectancy contingent upon being the beneficiary at the time of the insured's death."). Consequently, at the time she executed the Agreement, she had no property interest in the IRA. To be sure, she had an expectancy, but an expectancy is not a property interest. It is a mere hope or wish. As we have previously noted, during their marriage and following their divorce, Dewey was free to remove Carol as the named beneficiary to the East IRA, but did not do so. Therefore, since Carol had no property interest in the East IRA when she executed the Agreement, she could not have quit claimed her property interest in the East IRA because she had none, she had only an expectancy. Absent some specific language evidencing her intent to waive such an interest, we conclude that a general

property waiver provision does not accomplish a waiver of an expectancy interest.

 Our view is supported by those jurisdictions that have addressed this question. *See Estate of Altobelli v. IBM International Bus. Machines Corp.,* 849 F.Supp. 1079 (D.Md. 1994), *aff'd,* 77 F.3d 78 (4 th Cir.1996); *Maccabees Mut. Life Ins. Co. v. Morton,* 941 F.2d 1181 (11 th Cir.1991); *Walden v. Walden, supra; Estate of Bowden v. Aldridge,* 595 A.2d 396 (D.C.1991); *DeVane v. Travelers Ins. Co.,* 8 N.C.App. 247, 174 S.E.2d 146 (1970); *Schultz v. Schultz, supra. But see Rushton v. Lott,* 330 S.C. 418, 499 S.E.2d 222 (1998)(finding sufficient evidence to support a finding that decedent intended to divest husband of any beneficiary interest in annuity); *Estate of Anello v. McQueen, supra* (finding language of the divorce decree was sufficiently clear renunciation of ex-wife's interest in IRA). Although in *Estate of Anello,* the Supreme Court of Utah concluded the ex-wife had renounced her interest in the husband's IRA pursuant to a separation agreement, it nonetheless cogently explained that

> one who has an expectancy interest in an asset owned by a former spouse retains that interest unless a property settlement or divorce decree evidences a clear intent to deprive that person of the expectancy interest in addition to disposing of existing property rights. For a waiver or renunciation of an expectancy interest to be found, it is not enough that there be general language from which a renunciation or waiver might be adduced. It must appear from the terms of the property settlement or divorce decree that (1) the document focuses on the survivorship interests or expectancies, and (2) the disclaimer of any future rights that might arise from such expectancies is clear.

953 P.2d at 1145. We find this reasoning to be sound and choose to follow it.

Accordingly, we believe that the Agreement's general waiver language is insufficient to terminate Carol's rights as beneficiary to the East IRA. Not only did it fail specifically to mention the East IRA, it wholly failed to mention the waiver

of any survivorship interest or future expectancy. Without more, we do not believe that, by executing the Agreement with general waiver language, Carol waived her rights as a beneficiary to the East IRA. In order to do so, we believe it necessary that the language of the separation agreement clearly provide for waiver of future expectancy interests.

Thus, we conclude that the trial court was not legally correct in granting summary judgment. We do not decide, however, the factual question of whether Dewey removed Carol as the named beneficiary of the East IRA when he filled out another "Adoption Agreement and New Account Form for PaineWebber IRA's." The facts of that transaction are disputed, and hence, not properly decided by a motion for summary judgment. On remand, the trial court will need to make findings of fact on whether Dewey did—or did not—remove Carol as the named beneficiary. We note that the Agreement would certainly be relevant evidence of the parties' intentions as to the division of the marital property. As we have set out, however, the Agreement, by itself, does not operate as a waiver of Carol's rights as the named beneficiary of the East IRA. Consequently, we shall reverse the judgment of the Circuit Court for Prince George's County and remand the case for further proceedings consistent with this opinion.

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.**