768 A.2d 1029

**PAINEWEBBER INCORPORATED et al.**

**v.**

**Carol S. EAST.**

**No. 44, Sept. Term, 2000.**

Court of Appeals of Maryland.

March 14, 2001.

**410**

Cary J. Hansel (Barbara J. Gorinson of Joseph Greenwald & Laake, P.A., on brief), Greenbelt, for petitioners.

Benjamin Rosenberg (Lynn E. Ricciardella of Rosenberg, Proutt, Funk & Greenberg, LLP, on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

LAWRENCE F. RODOWSKY, Judge (Retired, Specially Assigned).

This interpleader action involves the interpretation of a separation agreement. The issue is whether, by the separation agreement, the former wife waived her right as the named beneficiary to the proceeds of an individual retirement account (IRA) maintained by her ex-husband, now deceased.

The respondent, Carol S. East (Carol), and her former husband, Dewey F. East, Jr. (Dewey), were married in 1985. In April 1986, Dewey opened an IRA account (the East IRA) with PaineWebber, Inc. (PaineWebber), by completing and executing a form entitled "Adoption Agreement and New Account Form for PaineWebber IRAs." Dewey named Carol the beneficiary of the East IRA, but, under the terms of the account as set forth in the agreement between Dewey and PaineWebber, Dewey reserved the power to change the named beneficiary. On March 14, 1990, Carol and Dewey entered into the subject separation agreement (the Agree-

ment). They were divorced, *a vinculo*, by the Circuit Court for Prince George's County on May 8, 1991.

Dewey married Deborah East (Deborah) in 1993. He died on December 10, 1996.

In October 1997 Carol sued PaineWebber in the Circuit Court for Prince George's County claiming the East IRA as named beneficiary. PaineWebber counterclaimed in interpleader, joining Deborah and the Estate of Dewey (the Estate) as additional counterclaim defendants under Maryland Rule 2–331(c).[1] PaineWebber averred that claims to the East IRA had been asserted against it by Deborah and also by the Estate.

The two newly joined parties moved for summary judgment on two grounds. First, they argued that Carol, in the Agreement, had waived any right as the named beneficiary to the East IRA. The movants further argued, *inter alia*, that Dewey, by signing in May 1996 a form headed, "Adoption Agreement and New Account Form for PaineWebber IRAs," on which the spaces for designation of a primary and a contingent beneficiary were left blank, had designated the Estate as beneficiary under the terms of the East IRA and in accordance with PaineWebber's internal operating procedures. The circuit court granted summary judgment in favor of the Estate, concluding that Carol had effectively waived, in the Agreement, any right, including that of a named beneficiary, to the proceeds of the East IRA.[2] The trial court did not address whether Dewey had effected a change of beneficiary. Carol appealed to the Court of Special Appeals.

In *East v. PaineWebber, Inc.*, 131 Md.App. 302, 748 A.2d 1082 (2000), the Court of Special Appeals reversed. It held

---

1. Deborah is the Personal Representative of the Estate.

2. Immediately prior to the grant of summary judgment, the circuit court ordered an interpleader, designated Carol as plaintiff and Deborah and the Estate as defendants, but the court did not specifically dismiss PaineWebber. Hence, it has been carried in the caption of the appeal to the Court of Special Appeals and in the filings in this Court.

that "the Agreement, by itself, [did] not operate as a waiver of Carol's rights as the named beneficiary of the East IRA." *Id.* at 316, 748 A.2d at 1089. The Court of Special Appeals addressed the provisions of the Agreement on which the appellees based their waiver argument, specifically the provisions entitled "Pension Waiver," "Waiver of Estate Claim," and "Property Division" which we shall discuss below.

Thereafter, we granted the Estate's petition for a writ of certiorari. *PaineWebber, Inc. v. East,* 359 Md. 668, 755 A.2d 1139 (2000).

I

 Maryland Rule 2–501 provides that summary judgment may be granted where "there is no genuine dispute as to any material fact and . . . the party is entitled to judgment as a matter of law." Under Maryland's summary judgment rule, a trial court determines issues of law and makes rulings as a matter of law. *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737, 625 A.2d 1005, 1011 (1993); *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202, 1205 (1990). Where there are disputed issues of material fact a trial court shall not grant summary judgment. *Pittman v. Atlantic Realty Co.,* 359 Md. 513, 537, 754 A.2d 1030, 1043 (2000); *Goodwich v. Sinai Hosp. of Baltimore, Inc.,* 343 Md. 185, 205–06, 680 A.2d 1067, 1077–78 (1996). Thus, the standard for reviewing a trial court's grant of summary judgment is "whether the trial [court] was legally correct." *Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118, 127 (2000); *Sheets v. Brethren Mut. Ins. Co.,* 342 Md. 634, 638–39, 679 A.2d 540, 542 (1996); *Heat & Power Corp.,* 320 Md. at 592, 578 A.2d at 1206. "In reviewing a summary judgment, an appellate court has the same information from the record and decides the same issues of law as the trial court." *Heat & Power Corp.,* 320 Md. at 591–92, 578 A.2d at 1206.

 Interpretation of the unambiguous separation agreement presented in the instant case is a question of law for the court and, therefore, is subject to *de novo* review. *Auction &*

*Estate Reps., Inc. v. Ashton,* 354 Md. 333, 341, 731 A.2d 441, 445 (1999); *Calomiris v. Woods,* 353 Md. 425, 434, 727 A.2d 358, 362 (1999); *Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 170–71, 702 A.2d 767, 773 (1997); *JBG/Twinbrook Metro Ltd. Partnership v. Wheeler,* 346 Md. 601, 625, 697 A.2d 898, 911 (1997); *Suburban Hosp., Inc. v. Dwiggins,* 324 Md. 294, 306, 596 A.2d 1069, 1075 (1991). As we explained in *Goldberg v. Goldberg,* 290 Md. 204, 428 A.2d 469 (1981):

> "Property settlement agreements, as all other contracts scrutinized under the law of this State, are subject to interpretation in light of the settled and oft-repeated principles of objective construction. *Orkin v. Jacobson,* 274 Md. 124, 128, 332 A.2d 901, 903 (1975). 'The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding.…' *Slice v. Carozza Prop., Inc.,* 215 Md. 357, 368, 137 A.2d 687, 693 (1958). '[W]here a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed.' *Kasten Constr. [Co.] v. Rod Enterprises, [Inc.],* 268 Md. 318, 328, 301 A.2d 12, 18 (1973); *Little v. First Federated Life [Ins. Co.],* 267 Md. 1, 6, 296 A.2d 372, 375 (1972); *Devereux v. Berger,* 253 Md. 264, 269, 252 A.2d 469, 471 (1969). Thus, when interpreting a separation agreement, this Court is 'bound to give effect to the plain meaning of the language used.' *Woodham v. Woodham,* [235 Md. 356,] 360, 201 A.2d [674,] 676 [(1964)]; *Sands v. Sands,* 252 Md. 137, [142–43,] 249 A.2d 187[, 190–91] (1969)."

*Id.* at 212, 428 A.2d at 474–75. *See also Feick v. Thrutchley,* 322 Md. 111, 114, 586 A.2d 3, 4 (1991); *Bruce v. Dyer,* 309 Md. 421, 433, 524 A.2d 777, 783 (1987).

We turn then to the three provisions of the Agreement which the Estate contends constitute a waiver by Carol of any claim to the East IRA as a named beneficiary.

## II

██ The "Pension Waiver" provision reads as follows:

"Each of the parties hereby expressly waives any legal right either may have under any Federal or State law as a spouse to participate as a payee or beneficiary regarding any interests the other may have in any pension plan, profit-sharing plan, or any other form of retirement or deferred income plan including, but not limited to, the right either spouse may have to receive any benefit, in the form of a lump-sum death benefit, joint or survivor annuity, or pre-retirement survivor annuity pursuant to any State or Federal law, and each of the parties hereby expressly consents to any election made by the other, now or at any time hereafter, with respect to the recipient and the form of payment of any benefit upon retirement or death under any such pension plan, profit-sharing plan, or other form of retirement or deferred income plan."

From this language, the Estate constructs the following argument:

"Thus, under the plain language of the 'pension waiver clause' quoted above, Carol East has 'expressly consent[ed] to any election made by [Dewey East] ... at any time ... with respect to the recipient ... of' the IRA. By consenting in advance to *any* election made by Dewey East *at any time* with respect to the *recipient* of the IRA, Carol East has expressly, contractually waived any right even to *challenge* the change of beneficiary made by Dewey East. By doing so, Carol East agreed that the election she now challenges is valid and unassailable. Given this specific waiver (of the right to challenge any change in beneficiary), Carol East is barred from objecting to any change of beneficiary made by Dewey East."

The argument would be logically unassailable were the facts as the Estate presents them. It has not been determined, however, who the named beneficiary is. If no change of beneficiary was effected by Dewey, then Carol's consent to a change is simply irrelevant. The Estate's consent argument

improperly assumes that the named beneficiary of the East IRA was validly and effectively changed. If the beneficiary has been effectively changed, it is pursuant to a power reserved in Dewey to which Carol's consent was not required, as we explain in Part IV, *infra.*

Furthermore, Carol does not claim the East IRA based on status or relationship as a spouse; she claims under a contract right, as the named beneficiary. Thus, the language waiving "any legal right . . . as a spouse to participate as a payee or beneficiary . . . in any . . . retirement or deferred income plan" does not defeat Carol's claim. We agree with the conclusion of the Court of Special Appeals that "the 'Pension Waiver' provision of the Agreement does not support a finding that Carol waived her rights as beneficiary to the East IRA." *East,* 131 Md.App. at 312, 748 A.2d at 1087.

### III

■■■ The provision of the Agreement entitled, "Waiver of Estate Claim," reads as follows:

"Each party releases and relinquishes to the other party and to his or her heirs, executors, administrators, or assigns, any and all claims or rights which may now exist or may hereafter arise by reason of the marriage between the parties with respect to any property, whether real, personal, or mixed, belonging to such other party specifically including but not limited to any right arising under the Maryland Marital Property Act. Without limiting the foregoing, each party waives and releases to the other party and to his or her heirs, executors, administrators, and assigns, all rights to share in any of the property or estate of the other party which has arisen or may hereafter arise, by operation of law or otherwise, and specifically including any right, title or interest wife may have in Dewey East Excavating Co., Inc. Specifically, each party waives and releases all right of dower or courtesy, all right to share in the estate of the other party under the intestacy laws of any jurisdiction, all right of election to take against any last will and testament

of the other party whether executed before or after the execution of this Agreement, and all right to secure administration or to act as executor or administrator of the estate of the other party."

The Estate asserts that through the above-quoted portion of the Agreement Carol waived her right to assert a claim to the East IRA as the named beneficiary of that fund. The plain and unambiguous language of the Agreement did not have such an effect. This is because the proceeds of the East IRA, should it be determined on remand that Carol remained the named beneficiary of the fund at the time of Dewey's death, would be paid directly to her as a third-party beneficiary of the Dewey–PaineWebber contract, without passing through Dewey's probate estate. *See* Md.Code (1974, 1991 Repl.Vol., 2000 Cum.Supp.), § 1–401 of the Estates and Trusts Article; Md.Code (1980, 1998 Repl.Vol.), § 1–204 of the Financial Institutions Article. Thus, the waiver in the Agreement of rights against the Estate is simply inapplicable. The Court of Special Appeals correctly so held. *East*, 131 Md.App. at 312–13, 748 A.2d at 1087–88.

## IV

The "Property Division" section of the Agreement reads:

"As of the date of this Agreement, Husband acknowledges that the Wife has now in her possession personal property which belongs to the Wife. To the extent that Husband may have any interest in such property, the Husband for himself, his heirs, representatives and assigns quit claims any and all interest that the Husband may have in such property.

"As of the date of this Agreement, Wife acknowledges that all personal property now in husband's possession belongs to the Husband. To the extent that Wife may have any interest in such property, the Wife for herself, her heirs, representatives and assigns quit claims any and all interest that the Wife may have in such property."

The Estate asserts that the above language constitutes "a broad waiver of past, future, and expectancy interests." Initially we note that the language at issue is expressly limited to Carol's then existing interest in "all personal property" then in the possession of Dewey. In any event two decisions of this Court, both of which explain the nature of the interest held by the named beneficiaries of life insurance policies, compel an outcome contrary to that sought by the Estate.

In *Cassiday v. Cassiday,* 256 Md. 5, 259 A.2d 299 (1969), the insured had purchased five life insurance policies in which he designated his then wife as the beneficiary and in each of which he reserved the right to change the beneficiary. The separation agreement which preceded their divorce in part provided, " 'The wife hereby covenants and agrees that all the personal property now in the possession of the husband shall be his sole and separate property.' " *Id.* at 7, 259 A.2d at 300. Upon remarriage, the insured changed the beneficiary in three of the policies to his current wife, but he died without making any change in the other two policies.

In a contest between the former wife and the widow over the proceeds of the two policies, the widow argued, *inter alia,* that the ex-wife had lost "her rights as the named beneficiary in the two policies in question as a result of [the personal property provision] of the separation agreement." *Id.* at 12, 259 A.2d at 302. The trial court found that the separation agreement did not extinguish the ex-wife's rights as the named beneficiary, and we affirmed, stating:

"The two policies as choses in action were delivered to the insured and unquestionably he *could* have changed the beneficiary ... if he had so desired and as he did in the other three life insurance policies. There is nothing in the separation agreement which precluded [the ex-wife] from receiving money ... as a beneficiary, designated by the husband, in his insurance policies. Any rights [the ex-wife] may have as a beneficiary named by the insured, were in no way affected by the delivery of the policies by her son-in-law to her husband. He had the undoubted right to change the beneficiary in his policies; he did not see fit to do this and

her rights as the beneficiary were established at the time of his death."

*Id.* at 12, 259 A.2d at 302–03. We see no result-altering difference between the language of the separation agreement in *Cassiday* and that in the "Property Division" section of the Agreement.

Prior to *Cassiday*, we defined the nature of the interest that a named beneficiary has in a life insurance policy prior to the death of the insured where the insured has reserved the right to change the beneficiary. *Chapman v. Prudential Ins. Co. of America, Inc.,* 215 Md. 87, 136 A.2d 752 (1957), involved the competing claims of a widow and a second woman. The husband, while still lawfully married, changed the beneficiary on his life insurance policy from his wife to " 'Marion K. Mellott fiancé [sic].' " *Id.* at 89, 136 A.2d at 753. We held that the beneficiary of the life insurance policy there involved "ha[d] no vested or indefeasible interest under the policy during the lifetime of the insured, but only a revocable expectancy contingent upon being the beneficiary at the time of the insured's death" because the right by the insured to change the named beneficiary had been reserved. *Id.* at 90, 136 A.2d at 753 (citing *Rosman v. Travelers' Ins. Co.,* 127 Md. 689, 693, 96 A. 875, 876–77 (1916); *Bullen v. Safe Dep. & Trust Co.,* 177 Md. 271, 277, 9 A.2d 581, 583 (1939); *Blair v. Baker,* 196 Md. 242, 248, 76 A.2d 129, 130 (1950)). *See Durst v. Durst,* 232 Md. 311, 315, 193 A.2d 26, 28 (1963). We further stated that "[n]either notice to, nor the consent of, the beneficiary is necessary in order to effectuate a valid change of beneficiary, when the power to change beneficiaries has been reserved in the policy." *Chapman,* 215 Md. at 90, 136 A.2d at 753.

The United States Court of Appeals for the Fourth Circuit, applying Maryland law, has held that a change in beneficiary of an annuity contract is subject to the rules that govern the change of beneficiary of a life insurance policy. *Ballistreri v. Equitable Life Assurance Soc'y,* 473 F.2d 907, 1973 U.S.App. Lexis 11798 (4th Cir.1973).

We conclude that the interest held, prior to the owner's death, by the named beneficiary of an IRA in which the owner, as here, has reserved the right to change the beneficiary is the same as that held, prior to the insured's death, by the beneficiary of a life insurance policy in which a similar reservation has been made. The interest is a revocable expectancy, contingent upon being the named beneficiary at the time of the holder's death. The Court of Special Appeals cogently explained the application of this point of law to the facts of this case in the following statement:

"Consequently, at the time [Carol] executed the Agreement, she had no property interest in the IRA. To be sure, she had an expectancy, but an expectancy is not a property interest. It is a mere hope or wish. As we have previously noted, during their marriage and following their divorce, Dewey was free to remove Carol as the named beneficiary to the East IRA, but did not do so. Therefore, since Carol had no property interest in the East IRA when she executed the Agreement, she could not have quit claimed her property interest in the East IRA because she had none, she had only an expectancy. Absent some specific language evidencing her intent to waive such an interest, we conclude that a general [personal] property waiver provision does not accomplish a waiver of an expectancy interest."

*East*, 131 Md.App. at 314–15, 748 A.2d at 1088. The Agreement simply did not embrace Carol's expectancy interest as the named beneficiary of the East IRA.

Our conclusion is in accord with the position uniformly taken by those jurisdictions that have addressed this question. *See Maccabees Mut. Life Ins. Co. v. Morton*, 941 F.2d 1181, 1185 (11th Cir.1991) (concluding, based upon "the nature of IRAs and life insurance policies," that the ex-wife waived her "rights acquired through the marital relationship" to the IRA in the separation agreement, but finding that "her status as beneficiary was unrelated to the husband-wife relationship" and she, thus, did not waive her rights as a beneficiary to the proceeds of the IRA); *Walden v. Walden*, 686 So.2d 345, 346 (Ala.Civ.App.1996) (relying upon Alabama cases involving ben-

eficiaries of life insurance policies in holding "that the dissolution of the marriage had no legal effect upon the designation of the wife as the beneficiary under the husband's IRA"); *Estate of Bowden v. Aldridge,* 595 A.2d 396, 397–98 (D.C.1991) (holding language of separation agreement insufficient to establish waiver of expectancy interest in life insurance policy and IRA under a "convincing evidence" standard); *Graves v. Summit Bank,* 541 N.E.2d 974, 979 (Ind.Ct.App.1989) (applying rule from life insurance cases to an IRA in holding that ex-wife possessed no property right in the IRA at the time she executed the separation agreement. "[S]he merely had an expectancy" and her former husband "was free to change the beneficiary at any time"); *Schultz v. Schultz,* 591 N.W.2d 212, 214–15 (Iowa 1999) (holding that the award under a divorce decree of an IRA to one spouse does not terminate "the other spouse's expectancy interest as the designated beneficiary of that asset" absent language in the decree indicating that the court intended to affect the expectancy interest); *In re Estate of Rock,* 612 N.W.2d 891, 893–95 (Minn.Ct.App.2000) (relying upon life insurance cases in concluding that the evidence supported finding that the divorce decree did not remove the ex-wife as the primary beneficiary of IRAs and emphasizing that a different result might have an adverse effect where former spouses intentionally keep the other as beneficiaries of each other's IRAs to protect their children); *In re Estate of Bruce,* 265 Mont. 431, 877 P.2d 999, 1002 (1994) (property settlement agreement which did not refer to ex-wife's interest as a beneficiary of an IRA "did not constitute a relinquishment of [her] inchoate interest in the ... IRA as a beneficiary"). *Compare Estate of Anello v. McQueen,* 953 P.2d 1143, 1145–46 (Utah 1998) (recognizing general rule but finding that language of separation agreement stating that the parties took their own separate IRAs " 'free and clear of any claim or interest of the other party' " clearly expressed the parties' intent to waive "both existing property interests and future expectancies").

For these reasons Carol did not waive her claim to the IRA in the "Property Division" provisions of the Agreement.

V

The Estate urges this Court to affirm the trial court's grant of summary judgment on the alternate ground that, as a matter of law, Dewey effectively removed Carol as the named beneficiary of the East IRA. We shall not do so.

In appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the lower court relied in granting summary judgment. *Bishop v. State Farm Mut. Auto Ins.*, 360 Md. 225, 234, 757 A.2d 783, 787–88 (2000); *Gresser v. Anne Arundel County*, 349 Md. 542, 552, 709 A.2d 740, 745 (1998); *T.H.E. Ins. Co. v. P.T.P. Inc.*, 331 Md. 406, 409 n. 2, 628 A.2d 223, 224 n. 2 (1993); *Orkin v. Holy Cross Hosp. of Silver Spring, Inc.*, 318 Md. 429, 435, 569 A.2d 207, 210 (1990). "[W]e will not speculate that summary judgment might have been granted on other grounds not reached by the trial court." *Gresser*, 349 Md. at 552, 709 A.2d at 745. In *Geisz v. Greater Baltimore Med. Ctr.*, 313 Md. 301, 314 n. 5, 545 A.2d 658, 664 n. 5 (1988), we stated the rule as follows:

"On an appeal from the grant of a summary judgment which is reversible because of error in the grounds relied upon by the trial court the appellate court will not ordinarily undertake to sustain the judgment by ruling on another ground, not ruled upon by the trial court, if the alternative ground is one as to which the trial court had a discretion to deny summary judgment. For example, a motion might be denied in order to allow the party opposing the motion a further opportunity through discovery to present a triable issue of fact. *See Metropolitan Mtg. Fund v. Basiliko*, 288 Md. 25, 415 A.2d 582 (1980). Thus, in *Henley v. Prince George's County*, 305 Md. 320, 503 A.2d 1333 (1986), a case of alleged negligent hiring, we reversed a summary judgment for a defendant because, contrary to the trial court's conclusion, we found a triable issue of hiring. We would not, however, consider if a lack of proximate cause was an alternative support for the judgment because '[t]he effect of our ruling on the issue of proximate cause, or any other

issue not considered by the trial judge would be to deprive the trial judge of discretion to deny or to defer until trial on the merits the entry of judgment on such issues.' *Id.* at 333, 503 A.2d at 1340."

Here, the alternate ground urged by the Estate presents mixed issues of fact and law. Without suggesting any materiality to the facts, and inferences therefrom, as they appear in the record as presently constituted, there has been no determination whether there was a change of beneficiary form, executed by Dewey, that was lost by PaineWebber, whether, by leaving the beneficiary designation blank on a form that he signed, Dewey intended that the Estate be the beneficiary of the IRA, and whether there was compliance with Paine-Webber's rules for effecting a change in beneficiary of an IRA. The circuit court, at the very least, had discretion to deny summary judgment on the alternate ground. Thus, we shall not consider those issues.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY THE ESTATE OF DEWEY EAST.*