782 A.2d 365

Jacklyn Kay HEINEMAN

v.

Julie W. BRIGHT, et al.

No. 602, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Aug. 31, 2001.

Reconsideration Denied Nov. 5, 2001.

Paul M. Weiss, of Baltimore, for appellant.

Brett Ingerman (Shale D. Stiller, Kenneth L. Thompson, Kurt J. Fischer and Piper, Marbury, Rudnick & Wolfe LLP, on the brief), Baltimore, for appellees.

Argued before SALMON, DEBORAH S. EYLER, and MARVIN H. SMITH, (Ret., Specially Assigned), JJ.

SALMON, Judge.

In *PaineWebber Inc. v. East,* 363 Md. 408, 768 A.2d 1029 (2001), the Court of Appeals affirmed this Court's decision in *East v. PaineWebber Inc.,* 131 Md.App. 302, 748 A.2d 1082 (2000). The two main questions raised in the case *sub judice* arise as a consequence of the *East* decision, *viz:*

1.  Was the issue decided in *East* either raised or decided in the lower court and thus preserved for our review?

2.  If the answer to Question 1 is "yes," does application of the principles of law enunciated by the Court of Appeals in *East* require us to reverse the judgment in the case at hand?

We hold that the issue discussed in *East* was neither raised by appellant in the trial court nor decided by the trial judge. Thus, the issue was not appropriately preserved for appellate review. *See* Md. Rule 8–131(a). But even if the issue had been preserved, we would still have affirmed the decision of the trial judge when he granted summary judgment in favor of appellees, inasmuch as the *East* case is factually distinguishable from the case *sub judice.*

## I. *PROCEDURAL BACKGROUND*

Appellant, Jacklyn Kay Heineman ("Kay"), is the widow of G. Wendel Heineman ("Wendel"), who died testate on July 11, 1992. In his will, Wendel bequeathed his entire estate to his four daughters, except for a beneficial interest in a trust given to his former wife, Doris Heineman ("Doris"), in compliance

with a judgment of absolute divorce and property settlement agreement.

On April 8, 1996, Kay filed an amended complaint in the Circuit Court for Baltimore County against the personal representatives of Wendel's estate and Doris. Count I of the amended complaint asked the court to declare her (Kay's) rights under the Heineman Company, Ltd. Defined Benefit Plan and Trust ("the Trust" or "the Plan"), which the amended complaint described as "an ongoing pension plan as described in Section 401 *et. seq.* of the Internal Revenue Code of 1986, as amended."

In the amended complaint, Kay alleged that she and Wendel were married on October 27, 1989, and that, prior to the marriage, she and Wendel entered into a pre-nuptial agreement. Some of the relevant provisions of the pre-nuptial agreement were described in Kay's amended complaint as follows:

13. In paragraphs 1, 2 and 4 of the Pre Nuptial Agreement, Plaintiff and Decedent waived, released and relinquished all right, title, estate and interest, statutory or otherwise, in all property owned by the other party at the time of their marriage or acquired by either of them at any time after their marriage and in the estate of the other party upon his or her death. Specifically, paragraph 4 of the Pre Nuptial Agreement included the following waiver:

*The parties hereby expressly waive any legal right either may have under any Federal or state law as a spouse to participate as a payee or beneficiary under any interest the other may have in any pension plan, profit sharing plan, or any other form of retirement or deferred income plan,* including, but not limited to, the right either spouse may have to receive any benefit in the form of a lump sum death benefit, joint or survivor annuity or pre-retirement survivor annuity pursuant to any state or Federal law.

14. *It is the Plaintiff's contention that the language and substance of the aforementioned Prenuptial Agreement is*

*insufficient as a matter of law to waive Plaintiff's rights and/or interests as the sole beneficiary of the Plan due to the fact that it fails to satisfy the statutory spousal right waiver requirements set forth in Internal Revenue Code, 26 U.S.C. § 417(a).*

15. That Article VII (Death Benefits), Section 7.01 of the Plan documents defines "beneficiary" in pertinent part: "Beneficiary shall mean any person or legal entity duly and properly designated by a participant to receive any benefits which may be payable under this Plan and Trust upon or after death; and, *if there should be not such designation, or the designated beneficiary should predecease the participant, it shall mean the participant's spouse,* if married, or if not married, to his children equally. If the participant has no surviving spouse or children, then, the designated beneficiary shall be his estate." (emphasis supplied)

16. That prior to his death on July 11, 1992, Decedent failed to designate any person or entity as the beneficiary of the Plan. Consequently, under the express provisions of the Plan stated above, it is Plaintiff's contention that Plaintiff became the sole beneficiary at the time of Decedent's death.

(Emphasis added.)

In her prayer for relief, Kay asked the court to "find and declare that notwithstanding the terms of the Pre Nuptial Agreement, Plaintiff is the beneficiary of the benefits due the Decedent, G. Wendel Heineman, under the terms of the ... Trust."

Kay's allegations against Doris in the amended complaint were that Doris was guilty of a breach of trust (Count II) and a breach of fiduciary duty (Count III) because Doris failed to transfer to Kay "all Trust assets ... due [Kay] under the Trust" (Count III).

The case was transferred to Baltimore City because of venue problems. Thereafter, Kay moved for summary judgment against the defendants. The defendants filed a cross-motion for summary judgment, along with an opposition to

Kay's motion. Defendants argued: (1) Kay's claims were barred by issue preclusion and claims preclusion (due to a decision filed in the United States District Court for the District of Maryland in a related action concerning Kay's rights to certain property owned by the Trust); (2) the Trust was not subject to Section 401 *et seq.* of the Internal Revenue Code because it was not a "qualified plan"; and (3) the Internal Revenue Code is a tax statute and did not grant any substantive rights to Kay as a beneficiary of the Trust. The circuit court entered summary judgment in favor of the defendants and denied Kay's motion for summary judgment. A panel of this Court reversed the circuit court and held that Kay's action was not barred by principles of either issue preclusion or claims preclusion. *See Heineman v. Bright,* No. 1533, Sept. Term, 1997 (unreported, filed April 19, 1999). In reaching that result the panel did not address the merits of the defendants' argument concerning Section 401 *et seq.* of the Internal Revenue Code.

Once the case was remanded, both sides filed cross motions for summary judgment. Following a hearing on March 28, 2000, the trial judge declared the rights of the parties and once again ruled that the defendants were entitled to summary judgment.

## II. *FACTS*

### A. *The Pre–Nuptial Agreement*

Wendel married Kay, his second wife, on October 27, 1989, which was seven days after he and Kay executed the pre-nuptial agreement mentioned in Kay's amended complaint. The agreement stated that each party entered into the marriage with certain property that would remain his or hers, free from any claim of the other. The recitals, set forth at the beginning of the agreement, included the following:

> WHEREAS, each party owns certain real and/or personal property, which, pursuant to the terms and provisions of this Agreement, is to be and remain his or her respective

sole property, free from any claim, right, or interest therein in the other party;  and

\* \* \*

WHEREAS, the parties acquired their separate assets and property independently and without the help of each other, and they intend to marry *without any intent of gaining enrichment by any reason of any property rights, however large they might potentially be,* which, in the absence of this Agreement, might arise by reason of their marriage;  and

WHEREAS, the parties have agreed that each is economically independent of the other;  and

WHEREAS, the parties hereto enter into this Agreement in order to define the interests which each of them shall have in the property of the other during and after marriage, and in the estate of the other after marriage, and in the estate of the other after the death of one of them; . . . .

(Emphasis added.)

Additionally, as alleged in the appellant's amended complaint, in Paragraph 4 of the pre-nuptial agreement Kay expressly waived any right she had under any federal or state law "as a spouse to participate as a payee or beneficiary under any interest" she might have "in any pension plan . . . or any other form of retirement or deferred income plan, including, but not limited to the right" she might have to receive any benefit in the form of a lump-sum death benefit, joint or survivor annuity or pre-retirement survivor annuity pursuant to any state or federal law.

The parties' property interests disclosures were made in schedules attached to the pre-nuptial agreement.  Schedule A listed the property owned by Kay, and Schedule B listed the property owned by Wendel.  Wendel specifically listed the "Defined Benefit IRA," which included the Trust property here at issue, as one of his assets.

In other parts of the pre-nuptial agreement, Wendel and Kay waived all rights in all property owned by the other party at the time of the marriage or acquired by either of them at

any time after the marriage and in the estate of the other party upon his or her death.[1]

## B.  *Appellees' Position Below*

Appellees stressed that (1) because Kay gave up any right she had *as a spouse* to participate as a beneficiary under any pension plan Wendel might have (see Paragraph 4 of pre-nuptial agreement quoted *supra* ) and (2) because the Plan here at issue is specifically listed as property owned by Wendel in Schedule B attached to the pre-nuptial agreement, (3) it does not matter that Article VII, section 7:01 of the Plan (quoted *supra* in Paragraph 15 of Kay's amended complaint) provided that, if, as here, there was no designated beneficiary, then the surviving spouse would be the beneficiary of the Plan. In short, appellees contended that because Kay was not a *named beneficiary,* the only right she had under the Plan was as a surviving spouse and Kay gave up all her rights in the Plan as a spouse when she signed the pre-nuptial agreement.

In addition to the arguments already summarized, appellees also contended below that the provisions of 401 and 417 of the Internal Revenue Code were irrelevant because those provisions merely determined whether the Trust would get the benefits bestowed upon a qualified plan by the Internal Revenue Code, but those IRS (Internal Revenue Service) provisions were not intended to confer substantive rights to surviving spouses.

## C.  *Appellant's Contentions Below*

The Internal Revenue Service, on January 23, 1983, determined that the Trust set up by the Heineman Company was a

---

1.  Paragraph 1 of the pre-nuptial agreement read as follows:

[KAY] hereby waives, releases and relinquishes all right, title, estate and interest, statutory or otherwise, in all property owned by WENDEL at the time of the marriage or acquired by him at any time thereafter and in his estate upon his death, including but not limited to dower, widow's allowance, statutory allowance, distribution in intestacy and right of election to take against the Will of WENDEL, as well as the right to act as personal representative of his estate, which, under the present or future law of any jurisdiction, she might acquire as WENDEL's wife, widow, heir-at-law, next-of-kin, or distributee.

qualified plan and entitled to favorable tax treatment under 26 U.S.C. Section 401(a). Thereafter, Congress enacted the Retirement Equity Act of 1984 ("REA"), which, *inter alia,* amended certain sections of the Internal Revenue Code. One of the new provisions was that in order to remain a qualified plan certain amendments were required to be made. The Heineman Trust, after 1984, continued to receive favorable tax treatment.[2]

Section 417(a) of 26 U.S.C. was added to the Internal Revenue Code when the REA was enacted. Section 417(a) provided that the surviving spouse of a participant in a 401(a) qualified plan should receive the benefit of the Plan after the death of a participant unless, *following the death,* the spouse agreed in writing to waive the Plan's benefits. It is undisputed that Wendel was the sole participant in the Trust (or Plan) and that, *following his death,* Kay never waived her right to receive benefits.

In arguing her motion for summary judgment in the trial court, Kay made exactly the same assertion as she made in Paragraph 14 of her amended complaint, i.e., that the waiver language used in Paragraph 4 of the pre-nuptial agreement was "insufficient as a matter of law to waive [Kay's] rights and/or interests as the sole beneficiary of the [Trust] due to the fact that [the pre-nuptial agreement] failed to satisfy the statutory spousal right waiver requirements set forth in Internal Revenue Code, 26 U.S.C. § 417(a)."

In the trial court, Kay never contended that she had not waived the benefits of the Trust when she executed the pre-nuptial agreement; instead, she claimed that because the waiver was made before Wendel's death it was an invalid waiver under section 417(a) of the Internal Revenue Code.

In Kay's "Proposed Finding of Facts and Conclusion of Law"—filed approximately five weeks after the motion for

---

2. The parties do not agree as to whether the Plan was amended as required by the 1984 amendment.

summary judgment was argued—Kay's attorney clearly articulated her position:

11. The Retirement Equity Act of 1984 ("REA") amended various provisions of the ERISA and Internal Revenue Code. It is stipulated by the parties that, for purposes of this action (cross-motions for summary judgment), the Retirement Equity Act applies to the Plan.

\* \* \*

13. § 417 was added to the Internal Revenue Code by the REA. Said Section provides that the surviving spouse of a participant in a § 401(a) qualified plan receives the plan benefits following the death of the participant unless the spouse consents in writing to waive the benefits.

14. *Following the marriage* of Wendel and Kay, Wendel did not obtain Kay's consent to waive her rights as beneficiary of the Plan.

15. Under § 417 of the Internal Revenue Code and applicable Internal Revenue Code Treasury Regulations [Question and Answer 28 of Treas. Reg. 1.401(a)–20], since Kay's waiver was not obtained *after* the marriage, *but rather, was obtained in the Prenuptial Agreement,* and since the waiver was not in proper form, the said Prenuptial Agreement was ineffective, as a matter of law, to waive Kay's rights as beneficiary of the Plan.

(Emphasis added.) In short, Kay's position below was that even though a waiver was obtained in the pre-nuptial agreement, the waiver was invalid because it was made too soon—prior to Wendel's death.

Earlier, when Kay's counsel argued the summary judgment motions, he said:

So, you start at that point. The Plan says Jacklyn Kay Heineman is the beneficiary. You then go to Step 2. Therefore, she is beneficiary unless she waived her rights as beneficiary. So, Step Number 2 is then you have the prenuptial agreement. *In the prenuptial agreement Jacklyn Heineman waives her rights as beneficiary of Wendel Heineman's estate.* That's Step Number 2. Step Number 3

is well, is that a valid and effective waiver. If it's a valid and effective waiver she has no rights. If it's not a valid and effective waiver then we revert back to the Plan that she has rights and what we are alleging in this case and which we feel that is supporting by our argument is that the prenuptial agreement under Internal Revenue Service *Section 417 of the Code is not effective,* and I think the Code is very, very clear on that, is not effective, the prenuptial agreement to waive her rights as a beneficiary under a qualified plan. If that is true and it's not an effective waiver then once again we revert back to the face of the Plan itself and Jacklyn Kay Heineman is entitled to the assets of the breakdown.

(Emphasis added.)

Kay's counsel went on to argue:

It appears to me that if we are not right that the Internal Revenue Code, Section 417—*if we are not correct that the waiver that she made in the prenuptial agreement was ineffective to waive her rights under the Plan then it would seem to me that [appellees] are entitled to summary judgment.* If on the other hand we are correct and 417 and the other applicable arguments [3] that we've made to render the prenuptial agreement an ineffective waiver then I believe that we are entitled to judgment as a matter of law.

(Emphasis added.)

Based on the above arguments, the trial judge was presented with a very narrow issue, which he correctly phrased as follows: "Whether Kay is entitled to the benefits of the ... Trust despite the fact that she waived her rights to those benefits in the pre-nuptial agreement."

### D. *Trial Court's Decision*

After digesting the arguments summarized above, the trial judge filed a written opinion in which he said, *inter alia,*

---

3. Kay's counsel made no other arguments as to why the waiver in the pre-nuptial agreement was ineffective.

Kay claims that her pre-nuptial waiver of Wendel's pension benefits is ineffective under Sections 401 and 417 of the Internal Revenue Code because the waiver does not meet the requirements of those sections. However, this court finds that Kay's reliance upon the language of Sections 401 and 417 is misplaced.

Sections 401 and 417 of the Internal Revenue Code set forth a statutory scheme whereby a pension plan or trust can attain tax exempt status. One of the requirements of attaining tax exempt status is that the plan or trust must provide for a benefit to the surviving spouse. A pension plan or trust may only attain tax exempt status without providing such a benefit where the surviving spouse consents to waive the benefit. Treasury Regulation 1–401(a)–20 states that a waiver of a pension benefit by a surviving spouse in a pre-nuptial agreement, that does not otherwise meet the requirements of Sections 401 and 417, is not sufficient to qualify the plan for tax exempt status.

In addition, it is undisputed that the Heineman Company Trust was not amended after the enactment of REA; therefore, it was not a qualified plan after June 30, 1986. Because sections 401 and 417 of the Internal Revenue Code only apply to qualified plans, Kay's argument that those sections of the Code invalidate her pre-nuptial waiver must be rejected.

Lastly, Kay waived her rights to any pension plan benefits when she signed the Pre Nuptial Agreement, and this court has held that the Pre Nuptial Agreement is valid and effective. In conclusion, this court finds that Kay is not entitled to the proceeds of the Heineman Company Trust. . . .

### III. *ANALYSIS*

#### A. *Issue 1*

Appellant first contends that her motion for summary judgment should have been granted and appellees' motion should have been denied because she never waived, in the pre-nuptial

agreement, her right as the beneficiary under the Heineman Trust. This contention, unlike the contention made in the trial court, has nothing to do with Internal Revenue Code Sections 401 or 417(a). According to appellant, our recent decision in *East v. PaineWebber Inc.*, 131 Md.App. 302, 748 A.2d 1082, *cert. granted*, 359 Md. 668, 755 A.2d 1139 (2000), is directly on point and demonstrates that Kay did not waive her rights under the Trust when she signed the pre-nuptial agreement.[4] Appellees contend that the issue appellant now raises was never raised or decided in the trial court and thus is not preserved for our review.

Under Maryland Rule 8–131(a), this Court ordinarily will not decide any non-jurisdictional issue unless the issue plainly appears by the record to have been raised in or decided by the trial court. *Acquah v. State*, 113 Md.App. 29, 43, 686 A.2d 690 (1996). As the Court of Appeals said in *Devereux v. Berger*, 264 Md. 20, 31, 284 A.2d 605 (1971), where a "contention was not raised below either in the pleadings or in the evidence and was not directly passed upon by the trial court . . . . [t]he point was not preserved for appellate review."

Appellant admits that in the trial court she never raised the "specific argument or theory decided in *East*." Nevertheless, citing, *inter alia, Crown Oil and Wax Company of Delaware, Inc. v. Glen Construction Company of Virginia, Inc.*, 320 Md. 546, 578 A.2d 1184 (1990), and *Watson v. Peoples Security Life Insurance Company*, 322 Md. 467, 588 A.2d 760 (1991), she contends that there is no waiver if one's argument changes but the issue presented remains unchanged.

When a motion for summary judgment is filed, the pleadings frame the issues so that a court may determine what facts are material. *Vanhook v. Merchant Mut. Ins. Co.*, 22 Md.App. 22, 27, 321 A.2d 540 (1974). The issue framed in appellant's declaratory judgment action (see Paragraph 14 of the Amended Complaint quoted *supra*) was whether the

---

4. The Court of Appeals had not decided the *East* case at the time of oral argument of this case.

pension plan waiver language found in the pre-nuptial agreement was "insufficient as a matter of law" because it failed "to satisfy the statutory spousal rights waiver requirements set forth in Internal Revenue Code, 26 U.S.C. § 417(a)." In other words, the issue framed by the pleadings was not whether Kay had waived her rights by language used in the Trust; instead, the issue was whether the waiver was invalid because it had been made too early, i.e., before Wendel died. Because appellant now raises an issue not raised or decided below, the cases she cites (*Crown Oil* and *Watson,* both *supra* ) are inapposite.[5]

■ But even if we were to assume, *arguendo,* that the issue has been preserved for our review, we would hold that appellant did waive, in the pre-nuptial agreement, her interest in the Trust or Plan. The *East* case relied upon by appellant does not hold to the contrary.

In *East,* Dewey East, Jr. ("Dewey"), and Carol East ("Carol") were married in 1985; they later entered into a separation agreement, and were subsequently divorced. *East,* 131 Md. App. at 305–06, 748 A.2d 1082. One of the provisions in the separation agreement was a paragraph entitled "Pension Waiver," which, in all material respects, is similar to Paragraph 4 that appears in the pre-nuptial agreement signed by Kay.[6]

---

**5.** In her reply brief, appellant attempts to bolster her contention that the question was raised below by quoting from Paragraph 10 of her original complaint, which reads:

It is the Plaintiff's contention that the language and substance of the aforementioned Prenuptial Agreement is insufficient as a matter of law to waive Plaintiff's rights and/or interests as the sole beneficiary of the Plan.

The original complaint, however, was replaced by an amended complaint. The language from the original complaint was not repeated in the amended complaint.

**6.** The paragraph, as set forth in the *East* separation agreement, reads:

Each of the parties hereby expressly waives any legal right either may have under any Federal or State law as a spouse to participate as a payee or beneficiary regarding any interests the other may have in any pension plan, profit-sharing plan, or any other form of retirement

While Dewey and Carol were married, Dewey opened an IRA account with PaineWebber that expressly named Carol as the beneficiary. *Id.* at 306, 748 A.2d 1082. After Dewey's death, Carol sued to recover the proceeds of the IRA, arguing that the general waiver provision in the separation agreement did not affect her claim as a *named beneficiary* of the proceeds of the IRA. *Id.* at 308, 748 A.2d 1082.

The question presented to us on appeal was whether Carol, when she executed the separation agreement, waived her right to the proceeds of the IRA. *Id.* at 310, 748 A.2d 1082. We said in *East:*

> We first examine the "Pension Waiver" provision of the Agreement [the counterpart of Paragraph 4 of the Heineman's pre-nuptial agreement]. In its brief, the Estate concedes that the first portion of this provision "is simply inapplicable and irrelevant." We agree. In this provision, Carol waived her rights "as a spouse to participate as a payee or beneficiary regarding any interests the other may have in . . . any other form of retirement or deferred income plan." (Emphasis added.) Carol's right as named beneficiary to the proceeds of the East IRA *do not arise from her rights as a spouse,* but from Dewey's contract with Paine-Webber for the IRA which named Carol as the designated beneficiary. Accordingly, the first portion of this provision is inapplicable, as is the next portion; because we are not here dealing with Carol's consent to the change of beneficiary, that fact is simply irrelevant. During their marriage, as well as after their divorce, Dewey was free at anytime to remove Carol as the named beneficiary of the East IRA.

---

or deferred income plan including, but not limited to, the right either spouse may have to receive any benefit, in the form of a lump-sum death benefit, joint or survivor annuity, or pre-retirement survivor annuity pursuant to any State or Federal law, and each of the parties hereby expressly consents to any election made by the other, now or at any time hereafter, with respect to the recipient and the form of payment of any benefit upon retirement or death under any such pension plan, profit-sharing plan, or other form of retirement or deferred income plan.

*East,* 131 Md.App. at 306, 748 A.2d 1082.

Carol's permission to do so was not required. The issue is whether Carol waived her right, not whether she consented to being removed as a beneficiary. Thus, the "Pension Waiver" provision of the Agreement does not support a finding that Carol waived her rights as beneficiary to the East IRA.

*Id.* at 312, 748 A.2d 1082 (emphasis added).

We concluded our opinion in *East* by saying:

Accordingly, we believe that the Agreement's general waiver language is insufficient to terminate Carol's rights as beneficiary to the East IRA. *Not only did it fail specifically to mention the East IRA, it wholly failed to mention the waiver of any survivorship interest or future expectancy.* Without more, we do not believe that, by executing the Agreement with general waiver language, Carol waived her rights as a beneficiary to the East IRA. In order to do so, we believe it necessary that the language of the separation agreement clearly provide for waiver of future expectancy interests.

*Id.* at 315–16, 748 A.2d 1082 (emphasis added).

As mentioned earlier, the Court of Appeals affirmed our *East* decision. *East,* 363 Md. at 423, 768 A.2d 1029. In analyzing the pension waiver clause, the Court of Appeals said:

*Carol does not claim the East IRA based on status or relationship as a spouse; she claims under a contract right, as the named beneficiary.* Thus, the language waiving "any legal right ... as a spouse to participate as a payee or beneficiary ... in any ... retirement or deferred income plan" does not defeat Carol's claim. We agree with the conclusion of the Court of Special Appeals that "the 'Pension Waiver' provision of the Agreement does not support a finding that Carol waived her rights as beneficiary to the East IRA." *East,* 131 Md.App. at 312, 748 A.2d at 1087.

*Id.* at 416, 768 A.2d 1029 (emphasis added).

Carol East did not have a right to the benefits of the IRA because she was once Dewey's *spouse;* her rights emanated

from the fact that she was the named beneficiary in the IRA. But here, Kay was not a named beneficiary. Her claim as beneficiary arises solely out of the fact that on the day Wendel died she was Wendel's spouse. And Kay, under Paragraph 4 of the pre-nuptial agreement, specifically relinquished any legal rights she had "as a spouse" to be a beneficiary of any pension plan.

The case *sub judice* is distinguishable from *East* in another respect. In *East,* Carol never specifically gave up her interest in the IRA. But here, Kay, in Paragraph 1 of the pre-nuptial agreement, waived all her rights in any property owned by Wendel either at the time of the marriage or acquired after the marriage. At the time of the marriage, Kay knew she was giving up all her rights in the Plan because the Plan was mentioned specifically in Schedule B as property owned by Wendel.

In addition to her argument based on the *East* case, appellant also contends:

It is respectfully argued herein that, assuming that the Plan remained a "qualified" plan under § 401 at the time of Wendel's death, the failure of the Prenuptial Agreement to satisfy the consent requirements of § 417 rendered such Prenuptial Agreement ineffective to waive Kay's rights as beneficiary of the Plan.

Appellees counter:

[T]he provisions of I.R.C. § 401(a) relate solely to the criteria for tax qualification under the Internal Revenue Code, *In re Crosby,* 162 B.R. 276, 281 (Bankr.C.D.Cal.1993), and do "not create any substantive rights that a beneficiary of a qualified retirement trust can enforce." *Cowan v. Keystone Employee Profit Sharing Fund,* 586 F.2d 888, 890 n. 3 (1st Cir.1978).

*See also* 60 Am.Jur.2d *Pensions and Retirement Funds,* § 1180 (2000) (I.R.C. provisions governing pension plans do not create substantive rights that can be enforced by beneficiaries, participants, or fiduciaries of a qualified retirement trust).

■ For purposes of this case, it is immaterial whether the Plan complied with Internal Revenue regulations because those regulations can have no impact upon the question of whether Kay waived her rights to benefits under the Plan in the pre-nuptial agreement. The aforementioned IRS provisions govern only the issue of whether the Trust should enjoy tax benefits. *Cowan v. Keystone Employee Profit Sharing Fund,* 586 F.2d 888, 890 (1st Cir.1978).

### B. *Issue 2*

■ As mentioned earlier, this case was previously before this Court after the trial court granted an earlier summary judgment motion filed by appellees. On April 19, 1999, in an unreported decision, we vacated the judgment of the Circuit Court for Baltimore City and remanded the case. The mandate in the earlier appeal, which was issued on August 4, 1999, provided that appellees were to pay the appellant's (Kay's) costs. Maryland Rule 8–611(b) provides:

> After the clerk of the trial court enters the mandate on the docket: (1) a party entitled to costs under the mandate may file a motion in the trial court specifying the amount of costs due and requesting that a judgment in that amount be entered by the trial court and that it be recorded and indexed as provided by Rule 2–601(c). . . .

In the first appeal, appellant's costs were $2,107.90. On November 17, 1999, pursuant to Maryland Rule 8–611(b), appellant moved the trial court to enter judgment in her favor against appellees in the amount of $2,107.90. Appellees opposed this motion on the ground that "there is a high probability that this case will be appealed again and that there will be additional costs." Appellee further argued that "the current mandate is almost certainly interlocutory in nature, and any exchange of money relating to costs should await a final determination of the parties' liability for costs." The trial judge, without explanation, denied appellant's motion for costs.

In the present appeal, appellees claim the denial of the motion was proper. Appellees first argue:

Maryland Rule 8–606 provides that "any disposition of an appeal ... shall be evidenced by the mandate of the Court, which shall be certified by the Clerk under the seal of the Court and shall constitute the judgment of the Court." Thus, notwithstanding Maryland Rule 8–611(b), cited by Kay, the mandate *is* a judgment and the circuit court's entry of judgment as to costs already awarded would be duplicative.

This argument is frivolous. The mandate did not constitute a *monetary* judgment. Appellant, pursuant to the mandate in the first appeal (*Heineman I* ), followed, exactly, the dictates of Rule 8–611(b) and was entitled to a judgment for costs in the amount of $2,107.90.

Appellees next assert:

Further, Maryland Rule 2–602(a)(3) provides that "an order ... that adjudicates fewer than all of the claims ... is subject to revision at any time before the entry of judgment that adjudicates all of the claims by and against all of the parties." Indeed, had this mandate been issued in *Heineman I,* Kay would be correct because that case was ended.

This argument is also without merit because it fails to explain why, pursuant to Rule 8–611(b), the trial judge should not have ordered appellees to pay court costs in the amount prayed for by appellant.

**JUDGMENT DENYING APPELLANT'S MOTION FOR ENTRY OF JUDGMENT FOR COSTS IN THE AMOUNT OF $2,107.90 REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR ENTRY OF AN ORDER FOR COSTS IN FAVOR OF APPELLANT IN THE AMOUNT OF $2,107.90; JUDGMENT OTHERWISE AFFIRMED; COSTS OF THIS APPEAL TO BE PAID SEVENTY–FIVE PERCENT BY APPELLANT AND TWENTY–FIVE PERCENT BY APPELLEES.**