28 A.3d 1

**M. Abraham AHMAD**

v.

**EASTPINES TERRACE APARTMENTS, INC., et al.**

**No. 1043, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 1, 2011.

Melvin G. Bergman, Greenbelt, MD, for appellant.

David W. Lease (Smith, Lease and Goldstein, LLC, on the brief), Rockville, MD, for appellee.

Panel: WOODWARD, KEHOE, JAMES P. SALMON (Retired, Specially Assigned), JJ.

WOODWARD, J.

On November 28, 2007, appellant, M. Abraham Ahmad, filed a complaint in the Circuit Court for Montgomery County against appellees, Eastpines Terrace Apartments, Inc. ("Eastpines"), Metamorphosis Limited Partnership ("Metamorphosis"), and Mehahmad Enterprises, Inc. ("Mehahmad").[1] The complaint included claims (1) against Eastpines and Metamorphosis for breach of contract for failing to reimburse appellant

---

1. Appellant also sued his sister, Linda Mansouri. Appellant's sole claim against his sister was for interference with economic relations. On May 6, 2009, the circuit court granted summary judgment in favor of Mansouri. That ruling is not being challenged in the instant appeal.

for payments made on behalf of those corporations; (2) against Eastpines, Metamorphosis, and Mehahmad for unjust enrichment; and (3) against Metamorphosis for an accounting.[2]  At the conclusion of appellant's case, during a bench trial, the trial court granted appellees' motion for judgment on these three claims.  Appellant presents four questions on appeal, which we have combined and rephrased: [3]

I. Did the trial court err in ruling that the statute of limitations barred appellant's claim for breach of contract?

II. Did the trial court err in ruling that the statute of limitations barred appellant's claim for unjust enrichment?

III. Did the trial court err in denying appellant an accounting?

For the reasons stated herein, we shall affirm the judgment of the circuit court.

## BACKGROUND

This appeal arises from a series of business transactions between family members.  Eastpines was established in 1977 with appellant's father, Mehdi Ahmad, as the sole shareholder. Eastpines soon thereafter purchased the Eastpines Terrace Apartments complex in Riverdale, Maryland.  Mehahmad, which was organized in 1978, purchased commercial property

---

2.  The complaint also contained a claim for constructive trust against Eastpines.  On May 6, 2009, the circuit court granted summary judgment in favor of Eastpines on that claim.  Appellant does not contest the court's ruling in this appeal.

3.  Appellant originally presented the following four issues for review by this Court:

I.      Whether the circuit court erred in ruling that the statute of limitations barred [appellant]'s claims.

II.     Whether the circuit court erred in ruling that a statute of limitations could not be tolled indefinitely.

III.    Whether the circuit court erred in ruling that the unjust enrichment claim was barred by the statute of limitations.

IV.     Whether the circuit court erred in denying an accounting.

located in Prince George's County with capital from appellant's parents. In 1984, appellant, appellant's brother, M. Jaffar Ahmad ("Jaffar"), and appellant's sister, Linda Mansouri, acquired an interest in Stanton Partners ("Stanton"), which owned property at 600–602 Maryland Avenue NE in the District of Columbia (the "Maryland Avenue property"). In 1986, appellant and Jaffar purchased Metamorphosis, which owned property at 1630 Florida Avenue NW, also located in the District of Columbia (the "Florida Avenue property").

In 1989, the parties consummated a transaction commonly known as a "1031 Exchange." [4] Under the terms of the exchange, Eastpines transferred Eastpines Terrace Apartments to a third party known as RFI Associates ("RFI"). RFI then delivered to Eastpines the deeds to Stanton's Maryland Avenue property and Metamorphosis's Florida Avenue property. RFI also transferred $1,150,000.00 in cash to Stanton and Metamorphosis. Eastpines also received 100% ownership in Stanton and 99% of Metamorphosis. The remaining 1% of Metamorphosis was owned by appellant. At the conclusion of the 1031 Exchange, Eastpines owned the Maryland Avenue property, the Florida Avenue property, 100% of Stanton, and 99% of Metamorphosis.

Between August 1989 and November 1995, appellant purportedly provided both direct and indirect financial support to Eastpines and Metamorphosis. Appellant thereafter stated to his father that he wanted to be reimbursed for these payments to Eastpines and Metamorphosis. After a series of discussions regarding repayment, appellant's father signed the following document on June 25, 2000 ("the 2000 Acknowledgment"), in his individual capacity and on behalf of Eastpines, Stanton, and Metamorphosis:

> **The undersigned,** Mehdi Ahmad, Eastpines Terrace Apts., Inc., Stanton Partners and Metamorphosis Limited

---

4. This name derives from 26 U.S.C. § 1031, which provides for a nontaxable transfer of property whereby the exchange is "solely for property of like kind which is to be held either for productive use in a trade or business or for investment." *Id.* at (a)(1).

Partnership, **hereby affirm, jointly and severally, their debt in the principal amount of One Hundred Seventy One Thousand Eight Hundred Dollars and Sixteen Cents that have been accrued since May Nineteen Hundred Ninety One in accordance with the attached schedule to [appellant] and bear an interest rate of Nine percent per annum compounded daily until paid. Moreover, the above-enumerated debtors waive any bar imposed by the Statute of Limitations for collection of the principal or the interests [sic] accrued thereon;** and agree, jointly and severally, to reimburse [appellant] for cost of collection or defense of any claims arising from this document, if necessary. [Appellant] hereby is authorized to collect any monies received from refinancing, conveyance, sale or transfer of assets of Mehdi Ahmad, Eastpines Terrace Apts., Inc., Stanton Partners, Metamorphosis Limited Partnership, or rents received from these properties or purchases made from the proceeds of these properties. Additionally, Mehdi Ahmad, Eastpines Terrace Apts., Inc. Stanton Partners, and Metamorphosis Limited Partnership hereby forever release [appellant] and entities and properties that he has an interest in from all claims, demands, accounting, causes of action, damages, breach of trust or fiduciary duties from any action that [appellant] has performed for the indebted parties.

(Emphasis added).

After appellant did not receive any repayment under the 2000 Acknowledgment, he wrote a letter on September 22, 2003, to Mansouri demanding, among other things, that he receive reimbursement for his payments to Metamorphosis. Appellant attached a copy of the 2000 Acknowledgment and stated that he would file suit if the matter could not be resolved. Appellees' counsel replied with a letter dated October 15, 2003, which stated that appellant's claims were barred by the statute of limitations and that appellant's father did not recall executing the 2000 Acknowledgment. Appellees' counsel also requested that appellant provide documentary evidence of the asserted debt. Appellant replied by letter dated November 11, 2003, in which he disputed appellees' counsel

argument that the bar of the statute of limitations applied to the monies due to appellant. In a letter dated December 12, 2003, appellees' counsel repeated his request for documents to support any debt owed to appellant and restated his belief that appellant's claim was barred. Appellant countered with a letter to appellees' counsel dated December 18, 2003, in which he stated "that it appears to me that we cannot resolve my issues with your clients amicably and litigation is becoming inevitable."

Approximately four years later on November 28, 2007, appellant filed a complaint in the Circuit Court for Montgomery County alleging, *inter alia,* that appellees breached the 2000 Acknowledgment and were unjustly enriched. Appellant also requested that Metamorphosis "fully and completely account for the funds that it has received and disbursed over the last twelve years."[5] A four day bench trial was held from June 1 through June 4, 2009. At the close of appellant's case, appellees made a motion for judgment under Maryland Rule 2–519.

Appellees argued, among other things, that appellant's claim for a breach of contract was barred by the statute of limitations, because appellant did not file suit until November 2007, which was well outside the three-year limitations period for breach of contract actions. Additionally, appellees asserted that the 2000 Acknowledgment did not constitute a perpetual waiver of the statute of limitations, and even if it did, most jurisdictions have held that such an agreement is void on public policy grounds. Similarly, appellees contended that appellant's claim for unjust enrichment was barred by the statute of limitations. With regards to the accounting, appellees stated that the whole point of the 1031 Exchange was for the Florida Avenue property to go to Eastpines and that Metamorphosis had no assets.

---

5. As previously stated, appellant's complaint also included a request for the creation of a constructive trust against Eastpines and a claim for interference with economic relations against Mansouri, both of which claims were resolved by summary judgment against appellant.

The trial court first granted appellees' motion as it related to the breach of contract and unjust enrichment counts and gave the following rationale for its ruling:

[T]here is a threshold problem. And that is the statute of limitations. . . .

And there is a reason that the statute of limitations or in equity the doctrine of laches exists. And that is that it's human behavior that over the course of time memories fade, records disappear. That to allow a claim to be brought indefinitely would disadvantage someone, most likely the person against whom the claim is made.

So the law devised this doctrine, the statute of limitations or as a matter of common law the doctrine of laches in equitable cases, in order to prevent that. To provide a reasonable period of time in which a claim can be made.

Here we have in 2000, I think it was July 25th of 2000 [actually June 25]. . . . We have what's been variously characterized as a note or agreement of some sort executed by the senior Mr. Ahmad. And it purports to recognize an indebtedness on behalf of various entities. And to agree to a repayment. And it also purports to waive the statute of limitations with regard to those debts.

I don't read the document . . . as being a perpetual waiver of limitations or even purporting to be a perpetual wavier of the statute of limitations, but rather as purporting to be a waiver of the statute of limitations up until that point. Of course, that was 2000 and the limitations would have run again, even were this note to be found valid.

And the senior Mr. Ahmad indicates that, you know, if I were to believe his testimony, that it wasn't explained to him, that he didn't know that that's what he was signing, that there was some misrepresentation to him.

I don't reach that level of fact finding. Because what I do find is even if it were a valid note that limitations would have run as to it.

If it were to be construed as being a future perpetual waiver of limitations, I think that that would not be enforce-

able in Maryland. I think that would be [ ] against public policy. And I think there's a good reason for that. If you could perpetually waive the statute of limitations then every note would automatically have a clause in it with a perpetual waiver of the statute of limitations and we'd be back where we started from. And I think that that is just simply not the law.

\* \* \*

So I do find that the claim with regard to the note, as well as the unjust enrichment claim, is barred by the statute of limitations.

The trial court then granted appellees' motion with respect to appellant's request for an accounting of Metamorphosis:

There remains [ ] the accounting against Metamorphosis. But once again, looking at the evidence that's been presented, the only suggestion of an asset by Metamorphosis was a property that was, by testimony, gated [sic] away, as I understood it, as part of a 1031 exchange.

That whether ultimately a deed was recorded or not, it appears that equitable title was transferred. There's been no evidence to suggest that there are any assets remaining in Metamorphosis. And while [appellant] may be a one percent owner, he appears to be a one percent owner of nothing.

So I don't find that there has been a satisfaction of the elements required to order an accounting.

After judgment was entered in favor of appellees, appellant filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

Rule 2–519(a) allows a party to "move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party[.]" Under Rule 2–519(b), "[w]hen a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the

court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence."

We review a trial court's granting of a motion for judgment under Rule 2–519 in accordance with Rule 8–131(c). *Cattail Assocs., Inc. v. Sass*, 170 Md.App. 474, 486, 907 A.2d 828 (2006). Under this standard, we accord no deference to a trial court's legal conclusions, which we review *de novo. Id.* Under Rule 8–131(c), however, "we must consider the evidence in the light most favorable to the prevailing party and decide not whether the trial judge's conclusions of fact were correct, but only whether they were supported by a preponderance of the evidence." *City of Bowie v. MIE Props., Inc.*, 398 Md. 657, 676, 922 A.2d 509 (2007) (quotations omitted).

## I.

### Did the trial court err in ruling that the statute of limitations barred appellant's claim for breach of contract?

Appellant argues that the trial court improperly determined that his breach of contract claim was barred by the statute of limitations, because, according to appellant, the parties agreed to a prospective waiver of the limitations period in the 2000 Acknowledgment. Appellant maintains that the waiver of the statute of limitations was not just retrospective, as the trial court ruled, because the "specific waiver language would be meaningless if the waiver was only designed to be retroactive." Appellant also contends that the waiver in the 2000 Acknowledgment is a tolling agreement, which is valid in Maryland. Appellant concludes that the suit was timely filed.[6]

---

6. Appellant also asserts that, because there was a fiduciary relationship between himself and Eastpines (Eastpines was the general partner of Metamorphosis, and appellant was a limited partner in Metamorphosis), the statute of limitations was tolled under the "continuation of events" theory, as discussed in *MacBride v. Pishvaian*, 402 Md. 572, 937 A.2d 233 (2007), until appellant could have reasonably discovered that he was not going to receive payment under the 2000 Acknowledgment.

Appellees reply that the trial court correctly concluded that the statute of limitations barred appellant's breach of contract claim. Appellees maintain that the trial court properly determined that the 2000 Acknowledgment did not contain a perpetual waiver of the limitations period, because it did not specifically employ prospective language. According to appellees, the acknowledgment of indebtedness only restarted the limitations period in June 2000, which had expired by the time appellant filed his suit in November of 2007. Finally, appellees contend that, even if the waiver in the 2000 Acknowledgment was construed to be perpetual, such waiver is invalid as against public policy.

## Analysis

■ "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Maryland Code (1974, 2006 Repl. Vol), § 5–

---

Appellant, however, never raised this contention before the trial court. "[W]here a contention was not raised below either in the pleadings or in the evidence and was not directly passed upon by the trial court ... [t]he point was not preserved for appellate review." *Heineman v. Bright,* 140 Md.App. 658, 671, 782 A.2d 365 (2001) (some alterations in original) (quotations omitted), *cert. denied,* 367 Md. 723, 790 A.2d 673 (2002); *accord* Maryland Rule 8–131(a).

Even if appellant's argument was properly before us, he would not be entitled to relief. As appellant correctly observes, "[t]he 'continuation of events' theory tolls the statute of limitations during the existence of a fiduciary relationship between the parties." *MacBride,* 402 Md. at 575 n. 1, 937 A.2d 233. The presence of a fiduciary relationship, however, does not toll the limitations period "where a 'party had knowledge of facts that would lead a reasonable person to undertake an investigation that, with reasonable diligence, would have revealed wrongdoing on the part of the fiduciary.' " *Id.* at 584, 937 A.2d 233 (quoting *Dual Inc. v. Lockheed Martin Corp.,* 383 Md. 151, 174, 857 A.2d 1095 (2004)). In a letter dated September 22, 2003, appellant demanded he be reimbursed for his financial contributions pursuant to the 2000 Acknowledgment. As the parties continued to communicate, appellant wrote appellees' counsel on December 18, 2003, that "it appears to me that we cannot resolve my issues with your clients amicably and litigation is becoming inevitable." Appellant thus realized on December 18, 2003, at the latest, that he had a colorable cause of action against appellees. Appellant, however, did not file suit until almost four years later, on November 28, 2007.

101 of the Courts & Judicial Proceedings Article ("C.P."). "[T]he purposes of statutes of limitation are to provide adequate time for a diligent plaintiff to bring suit as well as to ensure fairness to defendants by encouraging prompt filing of claims." *Fairfax Sav., F.S.B. v. Weinberg & Green,* 112 Md.App. 587, 612, 685 A.2d 1189 (1996) (alteration in original) (quotations omitted). We have previously stated that "the Maryland cases make clear that a statute of limitations is designed to protect a potential defendant from 'surprise' actions which inhibit his ability to fashion a defense because of the litigation's temporal distance from the disputed occurrence." *Reed v. Sweeney,* 62 Md.App. 231, 235, 488 A.2d 1016, *cert. denied,* 303 Md. 471, 494 A.2d 939 (1985).

▇▇▇▇ The trial court determined that the 2000 Acknowledgment was a contract between the parties. "The interpretation of a contract is a legal question subject to *de novo* review." *Thomas v. Capital Med. Mgmt. Assocs., LLC,* 189 Md.App. 439, 454, 985 A.2d 51 (2009) (quotations omitted). "Maryland follows the objective theory of contract interpretation, which focuses on the written text: the construing court's task is to determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Id.* (quotations omitted). The Court of Appeals has stated:

> The rules of contract interpretation are well-settled. . . . "Maryland adheres to the principle of the objective interpretation of contracts." The court will " 'giv[e] effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean.' " "Thus, our search to determine the meaning of a contract is focused on the four corners of the agreement." "[E]ffect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed."

*Clancy v. King,* 405 Md. 541, 556–57, 954 A.2d 1092 (2008) (alterations in original) (citations omitted).

■ The case *sub judice* involves the meaning of the first two sentences of the 2000 Acknowledgment, which state:

> The undersigned, Mehdi Ahmad, Eastpines Terrace Apts., Inc., Stanton Partners and Metamorphosis Limited Partnership, hereby affirm, jointly and severally, their debt in the principal amount of One Hundred Seventy One Thousand Eight Hundred Dollars and Sixteen Cents that have been accrued since May Nineteen Hundred Ninety One in accordance with the attached schedule to [appellant] and bear an interest rate of Nine percent per annum compounded daily until paid. Moreover, the above-enumerated debtors waive any bar imposed by the Statute of Limitations for collection of the principal or the interests [sic] accrued thereon; . . .

The plain language of the first sentence acknowledges the amount of the debt, the time period of the debt's accrual, and the rate of interest due on the debt. The second sentence makes clear the effect of the first sentence, to wit, that the bar imposed by the statute of limitations has been waived on the principal and "the interests [sic] accrued thereon." *See Jenkins v. Karlton,* 329 Md. 510, 531, 620 A.2d 894 (1993) ("Maryland law has long recognized that acknowledg[ ]ment of a debt barred by limitations removes the bar to pursuing the remedy."). Notably absent from the 2000 Acknowledgment is any explicit language relating to a perpetual duration for the waiver. Without the inclusion of such express language, an agreement cannot effectuate a waiver of the statute of limitations in perpetuity. *See Hunter–Boykin v. George Washington Univ.,* 132 F.3d 77, 82 (D.C.Cir.1998) (" '[I]n the absence of specific language making [the waiver] perpetual . . . it should be held to operate only for a reasonable time.' ") (Alterations in original) (quoting *Noel v. Baskin,* 131 F.2d 231, 232 (D.C.Cir.1942)). The trial court thus properly determined the consequence of this omission:

> I don't read the [2000 Acknowledgment] . . . as being a perpetual waiver of limitations or even purporting to be a perpetual waiver of the statute of limitations, but rather as purporting to be a waiver of the statute of limitations up

until that point. Of course, that was 2000 and the limitations would have run again. . . .

Appellant's argument that the trial court incorrectly concluded that the waiver in the 2000 Acknowledgment was not prospective is unpersuasive. According to appellant, the acknowledgment of the debt in the first sentence in and of itself constituted a retroactive waiver of the statute of limitations, and the second sentence revealed the parties' intention to create a permanent waiver. Appellant contends that any other interpretation of the second sentence of the 2000 Acknowledgment renders that language superfluous and contravenes the intent of the parties.

Our analysis, however, does not render the second sentence surplusage. The first sentence recognizes the amount of the debt, the accrual period of the debt, and the interest rate; this language established what was due and when it became due as of the time of the 2000 Acknowledgment. The second sentence articulates the import of the first sentence, namely, that the parties effectuated a waiver of the statute of limitations as of June 25, 2000. There simply is no language in the second sentence or anywhere else in the 2000 Acknowledgment that relates to a perpetual waiver of the statute of limitations. *See Hunter–Boykin,* 132 F.3d at 82. The effect of the 2000 Acknowledgment thus removed the limitations bar on June 25, 2000, and consequently, appellant's breach of contract claim was barred three years and one day later on June 26, 2003, which was well before appellant filed the instant suit in November of 2007. Accordingly, the trial court correctly ruled that appellant's breach of contract claim was barred by the statute of limitations.

■ Even if the 2000 Acknowledgment included specific language permanently waiving the statute of limitations, we are of the view that such provision would be void as contrary to public policy. The issue of whether parties are able to agree to a permanent waiver of the statute of limitations at the time a contract is signed has not been considered by

Maryland courts.[7]  According to *Williston on Contracts*, most jurisdictions that have ruled on this issue hold that such waivers are void:

Although in certain states it has been held that a contract not to plead the statute of limitations whenever made may be binding indefinitely, the great and substantial majority of jurisdictions hold that such a promise is definitely in contravention of the public policy of the statute and will not, in consequence, be enforced.

\* \* \*

When thus interpreted, that is, as a promise never to plead the statute it is immaterial when the promise is made, because, by the general rule, such a promise is illegal whether made before or after maturity of the debt.

31 *Williston on Contracts* § 79:110 (4th ed.2004) (footnotes omitted); *accord* 3 *Corbin on Contracts* § 9.9 (rev. ed. 1996) ("A promise not to plead the statute of limitations as a defense, or a promise to waive completely the benefit of it, are generally contrary to public policy particularly if made by contract in advance."); *Haggerty v. Williams,* 84 Conn.App. 675, 855 A.2d 264, 268 (2004) (" '[A] stipulation contained in a written instrument, waiving the defense of the statute of limitations permanently, as to any breach of contract that might occur in the future, is void and unenforceable as contrary to public policy.' " (Quoting *Hirtler v. Hirtler,* 566 P.2d 1231, 1231 (Utah 1977))).

As the Connecticut Court of Appeals noted, recognizing permanent waivers would lead to their routine insertion and ultimately eviscerate the statute of limitations. *Haggerty,* 855 A.2d at 269. This concern was expressed by the trial judge in his oral opinion:

I think that [a perpetual waiver of limitations] would be [ ] against public policy.  And I think there's a good reason for

---

7. The Court of Appeals, however, has upheld the enforcement of an agreement extending the period of the statute of limitations to a specific date.  *See Milton Co. v. Council of Unit Owners of Bentley Place Condo.,* 354 Md. 264, 274–76, 729 A.2d 981 (1999).

that. If you could perpetually waive the statute of limitations then every note would automatically have a clause in it with a perpetual waiver of the statute of limitations and we'd be back where we started from. And I think that that is just simply not the law.

We agree with the above rationale of the Connecticut Court of Appeals in *Haggerty* and of the trial court in the instant case. Thus any permanent waiver of the statute of limitations offends Maryland public policy and is unenforceable.

## II.

### Did the trial court err in ruling that the statute of limitations barred appellant's claim for unjust enrichment?

Appellant contends that the trial court also incorrectly concluded that the statute of limitations barred his claim for unjust enrichment. As a result, appellant concludes that the trial court's error demands a remand of the instant case. Appellees reply that the trial court properly concluded that appellant's unjust enrichment claim was barred by the statute of limitations. According to appellees, appellant's unjust enrichment claim, which was allegedly based on payments last made by appellant in 1995, was not subject to any purported permanent waiver in the 2000 Acknowledgment. Thus, appellees contend that the claim for unjust enrichment was brought well after the three-year limitations period. We agree with appellees.

Appellant asserted both in his complaint and during his trial testimony that he last provided appellees with the monetary benefits, which served as the basis of his unjust enrichment claim, in 1995. Because appellant sought the relief of repayment of money, his unjust enrichment claim was a claim "at law" and thus the three-year statute of limitations established by C.P. § 5–101 applied. *See Ver Brycke v. Ver Brycke,* 379 Md. 669, 698, 843 A.2d 758 (2004) (stating that an unjust enrichment claim that seeks the remedy of restitution for money is a claim "at law"). Unlike the breach of contract

claim, appellant's unjust enrichment claim was not the subject of the 2000 Acknowledgment, and thus appellant's perpetual waiver argument does not apply. Therefore, the limitations period on appellant's claim for unjust enrichment expired sometime in 1998 at the latest. Accordingly, the trial court did not err by ruling that appellant's suit for unjust enrichment, which was filed in November of 2007, was barred by the statute of limitations.[8]

## III.

### Did the trial court err in denying appellant an accounting?

Appellant argues that the trial court improperly denied his request for an accounting of Metamorphosis. Specifically, appellant contends that the trial court erroneously found that Metamorphosis had no assets. According to appellant, the trial court overlooked whether Metamorphosis had any assets or had disposed of assets to which he would be entitled a 1% share. Appellant further claims that there was no evidence in the record to support a finding that the transfer of the Florida Avenue property from Metamorphosis to Eastpines in 1989 was ever completed. Without such evidence, appellant asserts that the trial court's finding that Metamorphosis did not have any assets was clearly erroneous. Appellant concludes that he is entitled to a new trial for determining whether he is entitled to an accounting and to other financial information.

Appellees contend that the trial court properly rejected appellant's claim for an accounting of Metamorphosis. Ac-

---

8. Appellant asserts that the "continuation of events" theory also tolled the limitations period on his unjust enrichment claim. Appellant's contention, however, is without merit for the two reasons previously discussed. First, appellant's argument is waived because he failed to raise it before the trial court. *Heineman,* 140 Md.App. at 671, 782 A.2d 365; *accord* Rule 8–131(a). Furthermore, appellant's letter of December 18, 2003, revealed that at the latest, he had knowledge of appellees' wrongdoing in December of 2003. *See MacBride,* 402 Md. at 584, 937 A.2d 233. Therefore, the limitations period on appellant's unjust enrichment claim had expired by the time he filed suit in November of 2007.

cording to appellees, appellant's own trial testimony reveals that the deed to the Florida Avenue property was delivered from Metamorphosis to Eastpines (through RFI) in the 1031 Exchange, leaving Metamorphosis with bare legal title to the property, at the most. Lastly, appellees assert that any request for an accounting is barred by the three-year statute of limitations.

## Analysis

"An accounting may be had . . . where there is a confidential or fiduciary relation between the parties, and a duty rests upon the defendant to render an account." *P.V. Props., Inc. v. Rock Creek Vill. Assocs. Ltd. P'ship.*, 77 Md.App. 77, 89, 549 A.2d 403 (1988). The purpose of an accounting is "to adjust the accounts of the parties and render complete justice, as well to render a judgment for the balance ascertained to be due." 1A C.J.S. *Accounting to Actions* § 34 (2005) (footnote omitted). " '[T]he burden of proof is on the party seeking the remedy, who must establish, by a preponderance of the evidence, that he or she has the right to an accounting.' " *Golub v. Cohen*, 138 Md.App. 508, 520, 772 A.2d 880 (quoting 1 Am.Jur.2d *Accounts and Accounting* § 66), *cert. denied*, 365 Md. 474, 781 A.2d 779 (2001).

We agree with the trial court's ruling denying appellant an accounting of Metamorphosis. At the time of trial, the only asset claimed by appellant to be owned by Metamorphosis was the Florida Avenue property. Appellant testified that as part of the 1031 Exchange, there was a deed conveying the Florida Avenue property from Metamorphosis to RFI, and then the Florida Avenue property was "deeded over" by RFI to Eastpines. Appellant's counsel stated during argument before the trial court: "In the 1031 exchange the deeds from Stanton property and the deed from the Metamorphosis property went to RFI. And the deeds were transferred to Eastpines. Whether or not they filed them, recorded them, is up to them. That's in their records."

A deed is valid when there is both delivery and acceptance. *Gianakos v. Magiros*, 234 Md. 14, 26, 197 A.2d 897 (1964);

Maryland Code (1974, 2010 Repl.Vol.), § 3–201 of the Real Property Article. Thus, because the deed to the Florida Avenue property was delivered to and accepted by Eastpines, the transaction was complete, and Metamorphosis was no longer the owner of the Florida Avenue property.

Even if the deed conveying the Florida Avenue property was not delivered to Eastpines, Metamorphosis had, at most, only bare legal title to the property after the 1031 Exchange because of the doctrine of equitable conversion. "Under the doctrine of equitable conversion, a purchaser of land under a sales contract acquires equitable title to the property. Legal title to the property remains with the seller and does not pass, other than by operation of law, until a deed is properly executed and recorded." *Wash. Mut. Bank v. Homan,* 186 Md.App. 372, 392, 974 A.2d 376 (2009) (citations and quotations omitted). Appellant testified that the 1031 Exchange was a "real estate exchange contract." Therefore, after the 1031 Exchange, Eastpines had equitable title to the Florida Avenue property, and Metamorphosis had only bare legal title to such property. Accordingly, the trial court's finding that Metamorphosis did not have any assets at the time of trial is supported by the record.

Appellant also claims that he is entitled to an accounting of Metamorphosis, because "over a course of time, and at the time of trial, [Metamorphosis] had assets or had disposed of assets, which would include properties and incomes." Appellant, however, failed to state when these dealings took place or provide any evidence surrounding the purported transactions. As previously noted, appellant had the burden at trial to establish the right to an accounting. *Golub,* 138 Md.App. at 520, 772 A.2d 880. The only transaction referred to at trial was the 1031 Exchange, which transpired in 1989. Any request for an accounting regarding the 1031 Exchange is barred by the three-year statute of limitations. *See Grandberg v. Bernard,* 184 Md. 608, 612, 42 A.2d 118 (1945) (noting that a suit for an accounting in equity follows the three-year statute of limitations for an analogous suit for an accounting in law).

The trial court did not err in denying appellant an accounting of Metamorphosis.[9]

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

9. Appellant also argues that he is entitled to certain financial information on Metamorphosis under D.C.Code § 33–203.05. This claim is waived due to appellant's failure to raise this issue before the trial court. *Heineman,* 140 Md.App. at 671, 782 A.2d 365; *accord* Rule 8–131(a).